Welch *v.* Reiling *et al.*

(*Nashville,* December Term, 1936.)

Opinion filed December 15, 1936.

RAULSTON & RAULSTON, of South Pittsburg, for complainant.

KELLY & KELLY, of South Pittsburg, for defendants.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is a suit brought under the Workmen's Compensation Act of Tennessee (Code 1932, sec. 6851 et seq.).

It appears from the record that defendant Ray S. Reiling is a general contractor engaged in the business of building houses and other like structures. He was engaged by the Home Owners' Loan Corporation to do repair work on the home of Robert Crisp at South Pittsburg, Tenn. A part of the repair work was the painting of a portion of the roof of the house. Petitioner, Gideon G. Welch, residing in South Pittsburg, 43 years of age, is a carpenter and painter. Preparatory to making a bid for the work of repairing this house, Reiling requested Welch to estimate for him the cost of the labor in painting the roof. Welch estimated the labor at $15. Some days later, Reiling met Welch on the street, and the conversation between the two is narrated by Welch as follows:

". . . And I was walking through the park going home one evening, and Mr. Reiling hollered at me, and he said: 'Well, I got that job, what will you work for?' He said, 'I want you to work on this job, I want a good job because the man is particular with the work, a particular fellow,' and he said he wanted to put somebody on the roof who would do that kind of work. I told him I would work for fifty cents an hour. He said, 'All right just call it a trade.' He asked me when I could start, and I said I could start in the morning. He started off and said, 'Well, you will have to have a helper.' I said, 'Yes, I will have to have somebody else except myself. I cannot carry the paint up.' I told him I could get' Mitchell Welch to help me, and he said for me to tell him if he wanted to work for thirty cents an hour, 'I will give him thirty cents and you fifty cents.' "

Petitioner had worked for Reiling several years before, and previous to the above Reiling says: "I told him when I could I would use him as an employee."

The understanding with reference to the painting of the roof was that petitioner would paint the roof, using Reiling's material, for 50 cents an hour, with a helper at 30 cents an hour, the maximum limit of cost for labor being $15. Petitioner testified that Reiling said: "Hold this down, I took it in a way that I cannot let it run over that." And that he (petitioner) "told him if it run an hour or two over, being that I gave him the price and caused him to bid, I told him I would do it for nothing."

Reiling was to be out of town for a few days, and he says: "I took him over there and showed him the job and told him to be sure to get all the rust off, and be sure it didn't leak." Also Reiling instructed petitioner not to put the paint on until the roof was warm.

Petitioner placed a ladder flat on the roof and had the ladder fastened to a new rope which was passed over the roof and tied to a bent pipe. The rope came untied, causing the ladder and petitioner to fall 36 feet to a concrete walk, and seriously and permanently injuring him.

The defenses made to the action are (1) that petitioner was an independent contractor, and (2) that the policy of compensation insurance issued by defendant the Travelers Insurance Company to Reiling did not cover petitioner while engaged as a painter for Reiling.

On the trial, the chancellor found and decreed that petitioner was an employee of the defendant Ray S. Reiling, and not an independent contractor, and that as such employee, on January 3, 1935, while in the course of his employment, he sustained injuries accidental in nature from which he suffered an 80 per cent permanent

partial disability; that at the time of his injuries petitioner was covered by the policy of workmen's compensation insurance issued to the defendant Reiling by the defendant the Travelers Insurance Company, of Hartford, Conn.; that petitioner's average weekly wage at the time of the injury, and for 52 weeks immediately preceding, was $16 per week; that in his partially disabled condition petitioner is able to earn only 20 per cent of the weekly wage earned at the time of the injury; that under subsection (c) of section 6878 of the Code petitioner is entitled to an award of 50 per cent of the difference between the weekly wage he was able to earn before his injury and the weekly wage he is now able to earn, being $6.40 per week. The chancellor decreed to petitioner compensation at the rate of $6.40 per week for 300 weeks during the continuance of his present disability.

From the decree of the chancellor both defendants have appealed to this court and assigned errors, in substance, as follows: (1) There is no evidence to support the findings of fact and conclusions of law of the trial court; (2) the decree is contrary to law; (3) the court was in error in holding that petitioner was an employee and not an independent contractor; (4) the court was in error in holding that the policy of insurance covered petitioner while engaged as a painter for Reiling.

We think there is material evidence to support the chancellor's finding that petitioner was an employee of Reiling and not an independent contractor. The evidence on this point we have heretofore set out. There is no evidence to show any relinquishment by Reiling of his right to control the means and methods by which the painting was to be done. As a matter of fact, the

proof shows Reiling exercised his right of control. He directed that the paint not be put on the roof until the roof was warm, and to get all the rust off and see that the roof did not leak. There is nothing in the description of the employment of petitioner to negative the reservation by Reiling of the right to control and direct the means and method of the painting at any time he saw fit to do so.

Where employment appears, the presumption is that one doing work for another is an employee of such other, and the burden is upon the latter, who seeks to be relieved from the liability arising from such relation, to establish an independent contractual relationship. *Sledge* v. *Hunt,* 157 Tenn., 606, 12 S. W. (2d), 529. The employer must show that he relinquished his right to control the employee, and that the latter did not have to take his orders and instructions from him. *Mayberry* v. *Chemical Co.,* 160 Tenn., 459, 26 S. W. (2d), 148. It is the right to control and not the extent to which that right is exercised that determines the relation. *Odom* v. *Sanford & Treadway,* 156 Tenn., 202, 299 S. W., 1045. Likewise, nothing appears in the description of the employment to show that Reiling surrendered his right to discharge petitioner at any time, without a cause, if he saw fit to do so. Hence, he remained possessed of such right. The right to discharge is inconsistent with the relationship of independent contractor.

In our opinion, the chancellor was correct in finding from the proof, and the governing rules of law, that petitioner was an employee and not an independent contractor.

The next insistence is that the policy of insurance did not cover petitioner while engaged as a painter for Reil-

ing. In support of this contention reliance is placed upon the sixth paragraph of the policy, which reads as follows:

"This agreement shall apply to such injuries so sustained by reason of the business operations described in said Declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said Declarations or elsewhere in connection with, or in relation to, such work places."

In item 3, 1 (a), of the Declarations, under the title "Classification of Operations," carpentry, masonry, and excavation are set forth. Painting is not specifically mentioned. It is urged that painting is not incident or appurtenant to carpentry, masonry, or excavation, and hence is not covered by the policy.

Section A of the policy, in the parts thereof material here, is as follows:

"The premium is based upon the entire remuneration earned, during the Policy Period, by all employees of this Employer engaged in the business operations described in said Declarations together with all operations necessary, incident or appurtenant thereto. . . . If any operations as above defined are undertaken by this Employer but are not described or rated in said Declarations, this Employer agrees to pay the premium thereon, at the time of the final adjustment of the premium in accordance with Condition C hereof, at the rates, and in compliance with the rules of the Manual of Rates in use by the Company upon the date of issue of this Policy."

Under section 1 (a) of the policy the defendant company agreed:

"To Pay Promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due."

This provision of the policy is required by section 6899 of the Code (Workmen's Compensation Act) providing, in part, as follows:

"No policy of insurance against liability arising under this chapter shall be issued unless it contain an express agreement of the insurer that it will promptly pay to the person entitled to same all benefits conferred by this chapter and all installments of the compensation that may be awarded or agreed upon."

The insurance required by the act is insurance that will protect employees of the insured in the payment of any compensation to which they may become entitled under the act. We think, therefore, that the policy of insurance should, if possible, be construed so as to afford the protection to the employees contemplated by the act.

Reiling is a general contractor engaged in the business of building and repairing houses. It is admitted that he operated this business under the Workmen's Compensation Act. Welch, an employee of Reiling, while engaged in the repair of the roof of the house in question by painting the same, met with an accident growing out of his employment and was injured.

The operation of painting is not specifically mentioned in the Declarations. But under section A of the policy to the operations specified must be added operations necessary, incident, appurtenant thereto, or connected therewith. Certainly, it appears to us that painting by a general contractor engaged in building and repairing houses is an operation falling within the above

description. The operation of painting, in such circumstances, is clearly appurtenant to and connected with the operation of building or repairing, and is generally regarded as a necessary incident thereto. Reiling was asked:

"Q. When you build a house, state whether or not it is a part of your business to paint the house, if that is included in the contract?

"A. Yes, sir. Not always, but at times it is.

"Q. And paint the roof also?

"A. Yes, sir."

We are of the opinion that petitioner was covered by the policy while engaged, as an employee of Reiling, in the painting of the roof in question. All of the assignments of error are overruled and the decree of the chancellor is affirmed. The cause will be remanded for such further proceedings as may become necessary.