## FREEMAN v. LOYD.—212 S. W. (2d) 912.

Middle Section. May 1, 1948.

Petition for Certiorari denied by Supreme Court, July 17, 1948.

Raulston, Raulston & Swafford, of South Pittsburg, for L. W. Loyd.

A. F. Sloan, of South Pittsburg, for W. E. Freeman

FELTS, J. Plaintiff sued defendant for alleged negligence causing the death of his son, Herman Freeman. By different counts he charged defendant with common law negligence and with negligence under our Child Labor

Law: Violating Code sections 5316 and 5318 by employing deceased, a boy under eighteen years of age, and permitting him to work in defendant's plant without the certificate required by section 5318, as amended.

A verdict was directed on the common law counts and the case submitted on the statuory counts. The jury rendered a verdict for plaintiff for $5,000. On defendant's motion for a new trial, the judge held the verdict excessive and suggested a remittitur of $2,500. Plaintiff accepted the remittitur, stating he was doing so under protest, and a judgment was entered for him for $2,500.

█ Defendant appealed in error and insists that a verdict should have been directed for him. The argument made for him rests upon the version of the evidence most favorable to him. We must, however, take the version most favorable to plaintiff and discard all countervailing evidence. Upon such a view of the evidence, it tended to prove these facts.

Defendant, doing business as the Farm Supply Company at South Pittsburg, was operating a feed processing plant and selling his products at wholesale and retail. The plant was a rather large one, its rear on a railroad sidetrack and its front upon Second Street. On the sidetrack was a grain elevator, into which grain was unloaded from railroad cars, taken up some forty feet, and discharged into several bins. Next to the elevator and grain bins was the mill room, where there were a grist mill, a corn chopper and rolling mill, feed mixing mills, a seed cleaner, a sacker, and a sewing machine, scales, etc. The machinery of these mills was run by electricity. There were troughs connecting the grain bins with these mills.

Adjoining the mill room was a large room in which unprocessed grains and ingredients were kept. Con-

nected with that room were a warehouse on one side and on the other a large stockroom for processed feeds and defendant's office. All these different rooms were connected with each other, separated only by partition walls. They were but parts of the plant as a unit. There were six grain bins so connected with the elevator and the different mills that grain could be taken from the railroad cars, discharged into any of the bins, and carried to the different mills. The whole outfit was in effect "just one continous operation."

Defendant regularly employed some eighteen or twenty men to work in this plant. At the time in question he was short of men. He employed Herman Freeman March 16, 1946. Herman Freeman was then sixteen, reached his seventeenth birthday March 31, 1946, and met his death on April 11, 1946. It was stipulated that defendant did not have and did not keep on file any employment certificate or permit for Herman Freeman to work in the plant, as require by Code section 5318.

Defendant was operating his plant day and night, with a day shift and a night shift of men. Herman Freeman was working on the day shift and also extra time as part of the night shift. On April 9 he worked from 6:49 A. M. to 5:00 P. M. and from 7:00 P. M. until 10:00 P. M. On April 10 he worked from 6:53 A. M. to 5:00 P. M. and from 6:45 P. M. until 6:46 the next morning April 11. He went back to work at 8:00 A. M. and continued to work that day.

At the time, defendant had some hot corn and was operating his elevator, carrying the corn up, discharging it in one bin, running it out the bottom through troughs and back to the elevator. This for the purpose of airing or cooling the corn and keeping it from ruining. In such an operation it was often necessary for employees to go

into the bins and with shovels to dislodge the grain from the sides of the bins. The bins could be entered only from the top, and the only way to go to the top was up a ladder within the elevator alongside the belt carrying the cups taking up the grain.

The last time Herman Freeman was seen alive was about 10:00 A. M. when he started up this ladder to go on top of the bins. The top of the bins had no cover. There was a narrow walkway around the outside of them and a still narrower walkway between them. There were no bannisters or anything to hold to. A short time before the accident one of the defendant's foremen told him this situation was dangerous. No one seems to have seen the accident, and it does not clearly appear how it happened. That afternoon Herman Freeman's dead body was found in the bottom of one of the bins covered with a large quantity of hot corn. His body was burned, and it is stipulated that he died of suffocation from the corn on him.

Section 5316 provides: ''No child under the age of sixteen years shall be employed, permitted, or suffered to work at any of the following occupations or in any of the following positions.'' Then follows a long list, including these: ''adjusting any belt to any machinery,'' ''oiling or cleaning machinery or assisting therein,'' ''washing, grinding, or mixing mills.''

Section 5318, as amended by Chapter 81, Acts of 1945, provides: ''No minor under eighteen years of age shall be employed in any of the occupations mentioned in the preceding section (i. e. section 5316, Robert v. Cahill Forge Foundry Co., 181 Tenn. 688, 184 S. W. (2d) 29), unless said employer keeps on file and accessible to the shop and factory inspector, an employment certificate

. . ." Then follow details as to issuing the certificate and what it shall contain.

■■ These statutes are remedial, to protect the lives and limbs of children from the toll of dangerous employments (Schilly v. Baker, 184 Tenn. 645, 662, 202 S. W. (2d) 348, 351), and "are construed liberally to accomplish their objects, correct the evils and suppress the mischief aimed at." Chattanooga Imp. & Mfg. Co. v. Harland, 146 Tenn. 85, 89, 239 S. W. 421, 422; Jones v. Noel Tenn. App., 204 S. W. (2d) 336, 340.

■ This case, we think, comes within these statutes. In defendant's plant there were belts, machinery, grinding mills, and mixing mills. They were within the scope of Code section 5316 (Schilly v. Baker, 184 Tenn. 654, 658, 202 S. W. (2d) 348, 349), and by section 5318 defendant, without the employment certificate, was forbidden to employ or permit deceased to work about this machinery and mills. Knoxville News Co. v. Spitzer, 152 Tenn. 614, 279 S. W. 1043; Robert v. Cahill Forge & Foundry Co., 181 Tenn. 688, 184 S. W. (2d) 29.

It is true defendant did testify that he employed deeased to work only in the warehouse, but he admitted that the boy had occasionally been assigned to work in the elevator. Other evidence was that the boy operated the sewing machine, oiled the machinery, worked at the mixing mills, "worked all over the place," and "just did anything that come handy." The elevator, the bins, the machinery, and the mixing mills were all so connected that the whole outfit was in effect one continous operation.

■ Upon the circumstances here appearring we think the jury could reasonably find that defendant, in violation of sections 5316 and 5318, employed and permitted deceased to work about this machinery and these mixing

mills; and that this was negligence per se and the legal or proximate cause of the death sued for. But for the unlawful employment the death would not have occurred. It matters not that the precise manner of its occurrence was not shown. Howsoever it occurred, it was caused by the unlawful employment. Iron & Wire Co. v. Green, 108 Tenn. 161, 65 S. W. 399; Manning v. American Clothing Co., 147 Tenn. 274, 247 S. W. 103; Western Union Tel. Co. v. Ausbrooks, 148 Tenn. 615, 257 S. W. 858, 33 A. L. R. 330; Schilly v. Baker, 184 Tenn. 654, 202 S. W. (2d) 348; Jones v. Noel, Tenn. App., 204 S. W. (2d) 336.

While defendant assigned some other errors, they are not supported or referred to in his brief or argument. So under Rule 12 of this Court (Williams Code, Vol. VII, p. 549) and the well-settled practice, we treat them as waived. McDonnell v. Amo, 162 Tenn. 36, 41, 34 S. W. (2d) 212; State ex rel. v. Credit Men's Ass'n, 163 Tenn. 450, 470, 43 S. W. (2d) 918; Ward v. Gulf M. & N. R. Co., 23 Tenn. App. 533, 550, 134 S. W. (2d) 917; Louisville & N. R. Co. v. Conasauga River Lumber Co., 25 Tenn. App. 157, 163, 153 S. W. (2d) 143; Tri-State Transit Co. of La., Inc., v. Duffey, 27 Tenn. App. 731, 751, 173 S. W. (2d) 706.

All of the assignments of error are overruled. The judgment of the circuit court is affirmed. Judgment will be entered here for plaintiff against defendant for the amount of the judgment below, with interest, and for the costs of the appeal in error. The costs are also adjudged against defendant's surety on his appeal bond.

Howell and Hickerson, JJ., concur.