JARRATT v. CLINTON et al. (two cases).—241 S. W. (2d) 941.

Middle Section.    March 2, 1951.

Petition for Certiorari denied by Supreme Court, June 16, 1951.

672

Barton Dement, Jr., of Murfreesboro, for plaintiffs in error Lee Clinton and Buford Clinton.

Maxwell A. Hines, of Murfreesboro, and Hume, Howard, Davis & Boult, of Nashville, for plaintiff in error J. A. Bilbrey.

George S. Buckner, of Murfreesboro, for defendants in error.

FELTS, J. These two suits grew out of a collision of motor vehicles in Murfreesboro. Andrew M. Jarratt, Jr., a boy twelve year of age, suffered serious personal injuries when the motorbike on which he was riding was struck by a truck driven by Buford Clinton. He sued for damages for his injuries and his father sued to recover for loss of his services and for medical and hospital expenses.

The declarations charged that the accident and the injuries sued for were caused by the truck driver's negligence in the particulars set out, and that he was acting

as servant and in the business of the other two defendants, Lee Clinton and J. A. Bilbrey, the latter doing business as the Bilbrey Lime Company.

The cases were tried together. In the boy's suit there was a verdict and judgment for plaintiff against defendants for $15,000, and in the father's suit there was a verdict and judgment for plaintiff against the defendants for $4,806. Defendants appealed in error and, being represented by different counsel, have assigned separate errors, one set of assignments being made by J. A. Bilbrey, doing business as the Bilbrey Lime Company, and another set by the other two defendants, Buford Clinton and Lee Clinton.

We first consider Bilbrey's assignments. They present only one point: that he was not liable because the relationship between him and the other defendants was not that of master and servant but that of independent contractor. He insists, first, that a verdict should have been directed for him upon this issue at the close of the evidence for plaintiffs; and, second, that verdicts should have been directed for him on this issue at the close of all the evidence.

Plaintiffs submit that Bilbrey cannot rely on his first motion for a directed verdict. This motion was made at the close of the evidence for plaintiffs. At the same time the other defendants made a like motion. Both motions were overruled. Bilbrey did not take the witness stand himself but defendant Buford Clinton and three other witnesses were called for the defense.

Plaintiffs insist that defendant Bilbrey waived his first motion by introducing evidence in his defense. John Gerber Co. v. Smith, 150 Tenn. 255, 259, 263 S. W. 974. Bilbrey contends that he did not introduce any such evidence but was merely exercising his right to cross

examine the witnesses introduced by his co-defendants; and that he is entitled to have his right to a directed verdict tried upon the case as it stood at the end of plaintiffs' proof, without taking into consideration the evidence introduced by the other defendants.

We need not determine this controversy. We think that defendant Bilbrey cannot rely on his first motion because he did not make the court's action thereon a ground of his motion for a new trial. Rhoton v. Burton, 2 Tenn. App. 164, 168; Savage v. Spur Distributing Co., 33 Tenn. App. 27, 35, 228 S. W. (2d) 122, 123, 126, and authorities there cited.

So we must look to all the evidence, construe it most favorably to plaintiffs, take as true that which supports their rights, discard all countervailing evidence, and indulge all reasonable inferences to uphold the verdicts. Good v. Tennessee Coach Co., 30 Tenn. App. 575, 578, 209 S. W. 41, 43; Smith v. Sloan, 189 Tenn. 368, 376, 225 S. W. (2d) 539, 542, 227 S. W. (2d) 2.

The evidence so taken tended to prove these facts. Defendant Bilbrey, doing business as the Bilbrey Lime Company, owned and operated a rock and lime crusher which was located several miles south of Murfreesboro near the Murfreesboro-Shelbyville Highway. He sold and delivered crushed rock to the State Highway Department and lime and crushed rock to farmers, builders, and other people generally in that vicinity.

In his business of selling and delivering crushed rock and lime he used a number of trucks which were equipped for spreading lime on land or for dumping crushed stone. He owned three or four of the trucks so used and employed drivers to operate them. He also employed a number of other trucks and drivers to aid his own trucks in hauling and delivering crushed stone and lime.

Three of the trucks so used by Bilbrey in his business of selling and delivering lime and crushed stone belonged to defendant Lee Clinton. Lee Clinton drove one of them, Cecil Taylor one, and defendant Buford Clinton the other one, this being the one involved in this accident. One of these trucks was equipped with a lime spreader and the others were equipped to dump crushed stone. Bilbrey had been employing these trucks with these drivers continuously in his business for perhaps a year when the accident happened.

There was no writing to evidence the terms of the employment. It appears Lee Clinton maintained the trucks, furnished the gasoline and oil, and paid his brother Buford Clinton a flat wage of $25 per week. It does not appear what he paid the other driver. Bilbrey paid Lee Clinton so much per ton for the rock and the lime hauled by these three trucks. The price for hauling and spreading lime did not vary but remained the same irrespective of the distance of the hauling. But the price for hauling crushed stone did vary according to the distance hauled.

There was no contract of employment for any length of time. Bilbrey had the right to discharge the Clintons or terminate their services at any time. He also had the right of control and did control the conduct of these truck drivers and the details and methods of the work they did. He furnished them machinery for loading the trucks at his plant and gave them orders what to haul, where to haul it, and to whom to deliver it. Neither of the Clintons would usually know one day what they were going to do the next day. They would usually receive orders what to do and where to go every morning either from Bilbrey or from Bilbrey's bookkeeper, Mr. Beaman.

Bilbrey would usually receive orders for lime or crushed stone but sometimes purchasers would give such orders to the Clintons who would deliver them to Bilbrey. Bilbrey also required them, when they delivered stone or lime, to have the customer sign a delivery receipt in duplicate, one copy of which would be left with him and the other copy returned by them to Bilbrey.

On the morning of the day of the accident Buford Clinton drove the truck to Bilbrey's plant to receive orders. Bilbrey had already sent Lee Clinton to haul and spread lime on a certain farm, along with one of Bilbrey's own trucks. Beaman, Bilbrey's employee, instructed Buford Clinton to deliver a certain quantity of lime and crushed stone to a Mr. Bugg who lived some miles from Murfreesboro. Beaman rode on the truck with Buford Clinton and directed him how to go to Bugg's place. Beaman also had Buford Clinton drive him in the truck to Murfreesboro where he adjusted some misunderstanding about Bugg's order.

Buford Clinton then took Beaman in the truck back to Bilbrey's plant and resumed the hauling of the lime and crushed stone to Bugg's place. When he delivered the last load about 3:30 or 4:00 that afternoon Mrs. Bugg gave him Bugg's check for the stone and lime, which he took to his brother Lee and Lee delivered to Bilbrey. After Buford delivered this last load and while he was on his way to return the truck to the home of his brother Lee, this accident happened.

Such being the evidence, we think the jury could have reasonably found that Bilbrey had the right to control, and was actually exercising control of, the conduct of Buford Clinton and of the details and manner of the work he was doing which caused this accident; and that in this particular the relation between Bilbrey and Buford Clin-

ton was that of master and servant rather than that of employer and independent contractor.

All our cases show that the decisive test, and the touchstone of the distinction, of the relation of master and servant from that of employer and independent contractor is: "Had the defendant the right to control in the given particular the conduct of the person doing the wrong?" If so the relationship between them is that of master and servant and not that of employer and independent contractor. D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 513-514, 206 S. W. (2d) 897, and the numerous cases there cited.

The question who originally employed the servant, or who pays him, is not a conclusive test as to who was his master in or about a particular work in which he was engaged. The fact that Buford Clinton was paid by his brother did not prevent him from being the servant of Bilbrey in the particular work he was doing. Powell v. Virginia Construction Co., 88 Tenn. 692, 701, 13 S. W. 691, 17 Am. St. Rep. 925; Sledge v. Hunt, 157 Tenn. 606, 12 S. W. (2d) 529; D. M. Rose & Co. v. Snyder, supra, 185 Tenn. 515, 206 S. W. (2d) 904.

As stated, Bilbrey retained the right to discharge the Clintons and terminate their services at any time. Such a right to discharge is inconsistent with the relationship of employer and independent contractor and is a mark of the relationship of master and servant. Welch v. Reiling, 170 Tenn. 698, 703, 99 S. W. (2d) 216; Odom v. Sanford & Treadway, 156 Tenn. 202, 210, 299 S. W. 1045; Income Life Ins. Co. v. Mitchell, 168 Tenn. 471, 477, 79 S. W. (2d) 572; McVeigh v. Brewer, 182 Tenn. 683, 696, 189 S. W. (2d) 812.

The fact that Buford was using his brother's truck in hauling for Bilbrey did not negative the relation-

ship of master and servant between them or prevent such use from being in the master's business. Morrison v. National Life & Acc. Ins. Co., 179 Tenn. 18, 162 S. W. (2d) 497, second appeal, 179 Tenn. 29, 162 S. W. (2d) 501; Frost v. Blue Ridge Timber Corp., 158 Tenn. 18, 11 S. W. (2d) 860; Sledge v. Hunt, 157 Tenn. 606, 12 S. W. (2d) 529.

Where employment appears, the presumption is that one doing work for another is a servant, and the burden is on the employer to prove that the employee was an independent contractor, if the employer would avoid liability upon that ground. He must show that he relinquished the right to control the employee's conduct in the manner of doing the work. D. M. Rose & Co. v. Snyder, supra, 185 Tenn. 514-515, 206 S. W. (2d) 904, and cases there cited.

Where the evidence makes a prima facie case against defendant, and he could offer evidence to rebut the adverse inference but fails to do so, it may be inferred that the fully developed evidence would establish liability on his part. Western Union Tel. Co. v. Lamb, 140 Tenn. 107, 203 S. W. 752; National Life & Acc. Ins. Co. v. Morrison, supra, 179 Tenn. 41, 162 S. W. (2d) 501; The Vogue, Inc., v. Cox, No. 7, 28 Tenn. App. 344, 349, 190 S. W. (2d) 307.

For these reasons we think the trial judge did not err in overruling defendant Bilbrey's motion for a directed verdict and in submitting to the jury the question whether Buford Clinton was acting as servant and in the course of the business of Bilbrey in doing the work which brought about the accident and the injuries herein sued for.

As stated, the other defendants have also assigned errors. But these assignments do not point out

wherein the court erred, nor are they supported by any brief or argument. So under Rule 12 of this Court, Williams' Code, Vol. VII, p. 549, and the well-settled practice, we treat said assignments of error as waived. Brown v. Smith, 32 Tenn. App. 622, 630, 225 S. W. (2d) 91, 95; Freeman v. Loyd, 31 Tenn. App. 164, 170, 212 S. W. (2d) 912; McDonnell v. Amo, 162 Tenn. 36, 41, 34 S. W. (2d) 212; State ex rel. v. Retail Credit Men's Ass'n, 163 Tenn. 450, 470, 43 S. W. (2d) 918; Ward v. Gulf M. & N. R. Co., 23 Tenn. App. 533, 550, 134 S. W. (2d) 917; Louisville & N. R. Co. v. Conasauga River Lumber Co., 25 Tenn. App. 157, 163, 153 S. W. (2d) 143; Tri-State Transit Co. of La., Inc., v. Duffey, 27 Tenn. App. 731, 751, 173 S. W. (2d) 706.

All of the assignments of error are overruled and the judgments are affirmed. Judgments will be entered in this Court for the plaintiffs against defendants for the amounts of the judgments below together with interest and the costs of this appeal in error. The costs are also adjudged against the sureties upon the appeal bond of plaintiff in error, J. A. Bilbrey.

Howell and Hickerson, JJ., concur.