E. T. & W. N. C. TRANSPORTATION COMPANY, in its own right, and for the use and benefit of the American Mutual Liability Insurance Company,

v.

VIRGINIA SURETY COMPANY.

Civ. A. No. 643.

United States District Court,
E. D. Tennessee,
Northeastern Division.

Dec. 16, 1953.

Cox, Epps, Miller & Waller, Johnson City, Tenn., for plaintiff.

John A. Armstrong, Greeneville, Tenn., for defendant.

DARR, Chief Judge.

The plaintiff brings this action for the benefit of American Mutual Liability Insurance Company to recover from defendant the sum of $19,133.39 paid by said Insurance Company in settlement of certain personal injury claims against Wade H. Carter for which it is claimed the defendant was primarily obligated. The facts in connection with these transactions are as follow:

The plaintiff, E. T. & W. N. C. Transportation Company, hereinafter referred to as E. T., was a common carrier of freight by motor vehicle, both in interstate and intrastate commerce, under the jurisdiction of the Federal Interstate Commerce Commission and the Railroad and Public Utilities Commission of Tennessee. The American Mutual Liability Insurance Company, hereinafter referred to as American Mutual, was its insurance carrier, in compliance with said Commission's regulations. Wade H. Carter was the owner and operator of a White tractor truck and Fruehauf semi-trailer which he used generally for the distribution of beer for South H. Dixon Distributing Company; and the defendant was the insurance carrier covering public liability for personal injuries and property damage on the said Carter's White truck and trailer.

On or about October 5, 1946, E. T. and Wade H. Carter made arrangements for Carter to use his truck and trailer on a trip from Johnson City, Tennessee to Greenville, South Carolina and return, to haul certain miscellaneous freight for which E. T.'s regular facilities were not available. Carter had on perhaps two previous occasions made similar trips for E. T., each time under a separate arrangement. Carter was compensated for said haulage on a mileage basis.

On this trip of October 5th, Carter traveled with the truck for most of the trip, but was not with it on the lap between Chattanooga and Johnson City. The truck was then being operated by Carter's employee, Ralph Christian, and when about one mile west of the city limits of Greeneville, Tennessee, was involved in a collision with a Buick automobile on Highway U.S. 11–E. The Buick automobile was owned and operated by one W. B. Perry, and riding in it as passengers were Randall Perry, C. A. Perry and Carl Humphreys. All of the occupants of the Buick sustained substantial injuries and the automobile was partially demolished.

On March 6, 1947, all of the occupants of the Buick car, including the owner, brought separate actions against the said Wade H. Carter, Ralph Christian, E. T. and South H. Dixon Distributing Company to recover for their personal injuries and damages as a result of said accident. E. T. believing as a result of its investigation that said cases presented liability which would result in substantial verdict in favor of the respective plaintiffs, called upon the said Carter to compromise and settle the cases, as he was obligated by his agreement to do. But the said Carter declined to do this.

E. T. thereupon undertook negotiations with the several plaintiffs and obtained proposals of settlement aggregating $17,000, which it considered reasonable; and it again called on the said Carter and his insurance carrier, the defendant herein, to settle said suits, which he and defendant declined to do. Whereupon E. T., through its insurance carrier, the American Mutual, settled all four cases on November 14, 1947, by paying the aggregate sum of $17,000 and court costs.

On May 14, 1948, E. T., for the use and benefit of American Mutual, instituted a suit in the chancery court at Johnson City, Tennessee, against Wade H. Carter seeking to recover the amounts so paid in settlement of these suits, viz.: $17,000 plus costs, $120.95, with interest. Said suit was finally adjudicated by judgment against Carter in E. T.'s favor in the Court of Appeals of Tennessee, whereon certiorari to the Supreme Court was denied. Carter v. E. T. & W. N. C. Transp. Co., 35 Tenn.App. 196, 243 S.W.2d 505. An execution is-

sued on said judgment has been returned nulla bona.

At the time of the accident referred to herein, viz., October 12, 1946, there was in full force and effect a policy of public liability insurance for personal injuries and property damage covering the White truck and trailer of Wade H. Carter, issued by defendant. The policy insured South H. Dixon Distributing Company and/or Wade H. Carter, and the occupation of the insured was stated as "Truck owner and driver". The White truck and trailer were not actually described in the policy, but it is conceded that coverage had been extended thereto prior to the accident involved. Said policy provided a limitation of $20,000 for personal injuries in any one accident and a limitation of $5,000 for property damage.

The defendant was duly notified of the accident, and caused an immediate investigation to be made by taking the statements of a number of witnesses. On November 27, 1946, Wade H. Carter, the insured, was notified by the defendant that if the defendant investigated the accident and furnished the insured with services of attorneys to defend the suits for damages, that defendant would not be estopped from denying liability under the policy. No reason was stated why liability might be denied; but later liability was denied on the grounds that Item 5 of the declarations of the policy stated that the purposes for which the automobile was to be used are "Hauling Beer (Distributor)".

On May 20, 1947, the defendant instituted an action in this court against the assured, E. T., the American Mutual and others for a declaratory judgment as to its liability under the policy, which action was dismissed without prejudice on December 8, 1947.

The defense now is that the policy of insurance does not cover the accident because the truck was not at the time being used to haul beer (distributor). The following affirmative defenses are also made:

"13. Affirmative Defense Number 1.

"The policy in question, being No. E–315, issued by the defendant to Wade H. Carter and/or South H. Dixon Distributing Company, contains the following provisions, being 'Item 5' under the heading 'Declarations:'

"'The purposes for which the automobile is to be used are hauling Beer (Distributor).'"

Reliance is placed also on the following provisions of the policy:

"Virginia Surety Company Incorporated, Roanoke, Virginia (a stock insurance company, herein called the company) agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premiums *and in reliance upon the statements in the declarations* and subject to the limits of liability, exclusions, conditions and other terms of this policy;"

"This policy applies only to accidents which occur during the policy period, while the automobile is within the United States of America, its territories or possessions, Canada or Newfoundland, or is being transported between parts thereof and is owned, maintained and *used for the purposes* stated as applicable thereto in the declarations."

"By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

"14. Affirmative Defense Number 2.

"The original policy No. 315 issued by the defendant had attached thereto a limitation of coverage endorsement providing in part:

" 'It is expressly understood and agreed that such insurance as is afforded by the policy for bodily injury liability and property damage liability does not apply in the event that the named insured shall rent, hire or lease any automobile, truck, or tractor and trailer described in or covered by the policy to any other person, firm or corporation and such person, firm or corporation shall not be covered by the policy as an additional named insured.'

"It is averred that at the time of the accident on October 12, 1946, the named insured, Wade H. Carter, had leased or rented the equipment described in, or covered by, policy No. 315 to the ET & WNC Transportation Co. by a written instrument designated 'Lease Agreement', dated October 5, 1946.

"Said Lease Agreement provides in part:

" 'That for and in consideration of the mutual covenants, stipulations and the rental paid or to be paid as hereinafter provided, the lessor (Wade H. Carter) does hereby rent, lease and surrender to said lessee the exclusive use and control of the following motor vehicle hereinafter described, for the trip hereinafter specified.'

"Therefore, it is respectfully insisted that at the time of the accident, the vehicles described in, or covered by, said policy were under lease to the ET & WNC Transportation Co. in direct violation of the limitation of coverage endorsement, and therefore this defendant is not liable.

"15. Affirmative Defense Number 3.

"On page four of Policy E–315, issued by the defendant under the heading 'Exclusions' the following appears:

" 'This policy does not apply: (b) under any of the coverages, to liability assumed by the insured under any contract or agreement.'

"The lease agreement, by the terms of which the named insured, Wade H. Carter, leased the tractor and trailer to his co-defendant, the ET & WNC Transportation Company, provides in part:

" 'The lessor agrees that, he the lessor, shall pay all taxes for the use of the highway and furnish all fuel and oil and labor necessary for the operation of vehicles covered by this agreement, *and will be liable for all personal injury or property damage, and shall carry all public liability and property damage insurance required by Federal or State laws and regulations.' "

The plaintiff insists on the other hand that the designated purpose "hauling beer (distributor)" is not to be taken literally; that other provisions of the policy are in conflict indicating a liberal interpretation was intended; that the "purposes" set out in the declarations to the policy are intended to indicate only the principal or dominant use and not to exclude some incidental but similar use. The plaintiff says also that the premium paid indicates clearly their uses were not to be confined to hauling beer.

■ The sole question in the case, therefore, is whether the policy covers the truck and trailer while on this particular trip when miscellaneous freight and not beer was being hauled.

As indicating the intention of the parties as to the purposes for which the truck was to be used, as set out in Item 5, attention is directed to the printed portion of (a), (b) and (c) of this paragraph. Upon the assumption, no doubt, that most cars are described as if to be used for "pleasure and business", or for "commercial", this paragraph undertakes to explain what is the meaning of these terms.

"Pleasure and business" means a personal, pleasure, family and business use. In other words, personal and family uses

are included even though they may be anything but "pleasure" or "business".

"Commercial" purposes are defined "as use principally in the business occupation of the named insured as stated in item 1, including occasional use for personal, pleasure, family and *other business purposes*". (Emphasis added.)

The definition of "commercial" is particularly significant, as it expressly recognizes that the use set out in the declaration is not to be regarded as a rigid, literal, unvarying use, but is elastic and adjustable. All that is required is that the named use be *principally* in the business occupation of the named insured, as stated in Item 1, and may include *occasional* use for *other* business purposes.

No reason is seen why the defendant would give such an interpretation to the "commercial" use, and not by analogy give a like interpretation of any other use set out in the declarations.

To paraphrase this language by adaptation to the facts of this case: So long as the truck was used principally in the business of a "truck owner or driver", (which is the occupation of the named insured set out in the declarations of the policy) other uses will be recognized as covered, such as occasional use for personal, pleasure, family and *other business purposes*.

The policy thus by its own terms clearly by its definition of "commercial", indicates an interpretation as permitting the occasional use of the truck in other business besides hauling beer, so long as the "other business" was "the business occupation of the named insured", as stated in Item 1, truck owner and driver.

Also the placing of an original endorsement providing that the policy excluded "the transportation or hauling of gasoline, propane, butane or other volatile liquids" is entirely inconsistent with the insistence of a limited use of the insured vehicle.

Furthermore, the proof showed that the premium charged by the defendant and paid by the insured was the premium applicable to the hauling of miscellaneous freight, and was approximately fifty percent in excess of the premium that would have been applicable to hauling beer alone. The defendant has not tendered back the excess premium, and it is thus strongly indicated that the parties intended a coverage of hauling miscellaneous freight. It was held in Farmers' Feed Company v. Insurance Co. of North America, D.C., 162 F. 379, that where the underwriter knows the age and defective condition of a vessel, and accepts an unusual risk thereon *at nearly a double premium*, it is liable, notwithstanding an absence of complete seaworthiness, and is not permitted to urge the lack thereof as a defense, even though the policy required it. (Emphasis added.)

■ The amounts of premiums are based on the amount of liability for which the company may become liable under the policy. 32 C.J., page 1193, section 325; 44 C.J.S., Insurance, § 341, p. 1305.

■ It is recognized that, speaking in general terms, the coverage of an automobile liability insurance policy is limited to the uses specified in the policy. 45 C.J.S., Insurance, § 829(b), p. 889.

■ With respect to the risks or causes of loss covered, such policies are liberally construed against the insurer and in favor of the insured. 45 C.J.S., Insurance § 829(a), p. 885; Constitution Indemnity Co. v. Lane, 6 Cir., 67 F.2d 433; Commercial Standard Insurance Company v. Blankenship, 6 Cir., 134 F.2d 784.

In Constitution Indemnity Co. v. Lane, supra [67 F.2d 435], the declaration in the insurance policy described the assured's occupation as "auto repair garage." The automobile at the time an accident occurred was being operated by a person named Milton, an employee of the assured. The evidence showed that the assured operated on the first floor of his garage building an inside golf

course. The accident occurred while Milton was driving to a store to purchase food, a portion of which was to be used at the home of the assured and the remainder to be made into sandwiches and sold to the patrons of the golf course. The insurance company's insistence that the car was not being operated at the time of the accident upon any business covered by the policy was denied by the court.

In Commercial Standard Insurance Company v. Blankenship, supra, the insured was Helen Hester, whose business or occupation was described in the policy of insurance as "Clerk—Richland Market". The purposes for which her auto was to be used was stated as "Pleasure & Business"; and then the policy defined the terms "pleasure and business" and "commercial" in practically the same language found in the defendant's policy in this case, as set out above.

Miss Hester was employed at the time the policy was issued and at the time of the accident involved as a clerk in the Richland Market at Nashville, Tennessee. Shortly after the policy was issued she became interested as a partner with J. K. Wakefield in a laundry and dry cleaning company. She continued to hold her position in the Richland Market and did not participate in the operation of the partnership business. She permitted her automobile to be used in the partnership business, and a delivery man employed by the laundry company, while using the auto for the purpose of picking up clothing to be dry cleaned, collided with a lady, causing personal injuries. It was argued by the insurance company that the policy did not cover, but the court held otherwise and permitted a recovery. See also Welch v. Reiling, 170 Tenn. 698, 99 S.W.2d 216; Maryland Casualty Co. v. Cassetty, 6 Cir., 119 F.2d 602.

In Smith v. Service Fire Ins. Co., 1946, 184 Tenn. 139, 197 S.W.2d 233, an auto collision policy contained a provision suspending coverage while auto was used " 'to carry persons for charge,' " unless such use was specifically disclosed and described.

When the policy was taken out the insured was a molder and described the use of the car to be that for "business and pleasure." Some six months after taking out the policy the insured quit his job as molder and became a taxicab driver, using the insured car as a taxicab. While so engaged he took a man and his son to a place near the airport at Chattanooga, left the man's son and was returning to Chattanooga, with the man as a passenger, when the accident occurred, from which damage to the car resulted.

The insured, while admitting that he was in the business of operating a taxicab, attempted to avoid the suspension of coverage clause by saying he did not charge this particular passenger as he was a personal friend. The court in denying him a recovery on the ground that the suspension clause was in force and would not be affected by an isolated trip, said: "It would seem that under a fair and reasonable construction of this provision the reference is to the use to which the applicant intends to devote his automobile. He is required to state the intended and contemplated use of his automobile and pay the premium therefor under penalty of having no coverage against such losses, as may occur unless he does so. He must declare and describe such use in advance, in order that it may be set out in the policy, and pay the premium therefor. He could not *be expected to declare and describe a use which he did not contemplate at the time*, i. e., *specific and unforeseen occasions which might possibly, but not necessarily, occur at some distant date. Therefore, the contemplation of the policy provision would be that of the general and regular use to which the applicant intended to devote his automobile.*" (Emphasis added.)

To the same effect, and even more pointedly, it was held in Terrasi v. Peirce, 304 Mass. 409, 23 N.E.2d 871, that the declarations in policies as to the use to which the insured vehicle was

to be put means merely the "dominant use", and is not to be construed as a declaration that the vehicle would never be used for some other purpose on an occasional basis.

Again, it would appear that the plaintiff is clearly within the protection of the insuring agreement, coverage A and B, wherein the defendant obligated itself:

"Coverage A—Bodily Injury Liability. To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile." Coverage B is of like import for property damage. The insured in this case has become obligated to pay for the damages involved by reason of the liability imposed upon him by final judgment in the court of appeals of Tennessee. Carter v. E. T. & W. N. C. Transp. Co., supra.

The language "arising out of the ownership, maintenance or use of the automobile" is general and all inclusive and cannot be held to be modified or restricted by the clause in the preamble "in reliance upon the statements in the declaration".

The defendant seeks refuge from the above obligations by claiming that the insuring agreements are effective to provide indemnity only against loss arising from the operation of the truck in hauling beer. But the policy does not so provide.

Judge Hicks held otherwise in Constitution Indemnity Co. v. Lane, supra.

The proof in this case indicates clearly that the hauling of beer was the dominant use to which the insured truck was put, and the haulage of miscellaneous merchandise was only casual or incidental. For months before the accident the insured had engaged in hauling beer for South H. Dixon Distributing Company from Lancaster, Pennsylvania, to Johnson City, Tennessee. After the accident he continued in the same business for them and others until the expiration of this policy.

Only two or three trips were made for E. T. wherein miscellaneous merchandise was hauled, covering a period of six or seven weeks. During that six or seven weeks, as well as before and after, he was hauling beer. He hauled for South H. Dixon Distributing Company, Appalachian Beverage Company and Tennessee Beverage Company.

For the most part, the cases holding that insurance policies do not cover where the use is different from that declared in the policies are based on the fact that the dominant use is wholly changed and not changed merely for casual or incidental (nondominant) purposes, or else the use was more dangerous and involved an increased liability.

Such would seem to be the effect of the holding in C. E. Carnes & Co. v. Employers' Liability Assur. Corp., 5 Cir., 101 F.2d 739, 740, strongly relied on by defendant, where the policy called for " 'Handling Farm Machinery, Crane Fixtures & Paints', " while the assured had later gone into the business of transporting butane gas, a highly inflammable and dangerous commodity. It was held the policy did not cover.

In the present case, there would seem to be no more hazard in transporting miscellaneous merchandise than in hauling beer. They were both interstate operations. But if the hazard was greater, then the insured has paid the premium for the increased risk, and should be entitled to the protection afforded by the premium.

The defendant further says that the policy involved contained the following provision with respect to a lease on the insured vehicle: "It is expressly understood and agreed that such insurance as is afforded by the policy for Bodily Injury Liability and Property Damage Liability does not apply in the event that the named insured shall rent

hire or lease any automobile, truck or tractor and trailer described in or covered by the policy to any other person, firm, or corporation and such person, firm or corporation shall not be covered by the policy as an additional name insured."

And it is alleged that, at the time the accident occurred, the named insured had leased or rented the insured equipment to E. T. by written instrument, designated "Lease Agreement", which provides in part: "That for and in consideration of the mutual covenants, stipulations and the rental paid or to be paid as hereinafter provided, the Lessor does hereby rent, lease and surrender to said Lessee the exclusive use and control of the following motor vehicle hereinafter described, for the trip hereinafter specified."

And the defendant claims that this lease agreement would have the effect of avoiding any insurance that might otherwise exist under the policy.

The so-called lease agreement is obviously a misnomer, and the language set out therein, as above quoted, did not correctly describe the operating agreement between Wade H. Carter and E. T.

The undisputed proof shows that Wade H. Carter retained full possession of the truck, employed and paid the operator, bought all the gas and oil, advanced all the other expenses of the trip and paid taxes and government charges. He was personally with the truck and helped operate it most of the time; and throughout the trip he had the exclusive charge, direction, supervision and control of the actual operation. All the connection that E. T. had with the trip was to pay Carter so much per mile for the distance traveled. As indicating that the written agreement was not treated as the actual agreement as made, the truck supposed to be leased was not described or identified.

In the opinion of the Court this did not constitute a lease of the truck; and the actual facts as they existed would seem to control as indicating the intention of the parties.

While no particular form of words is necessary to create a lease, it is essential that one party (the lessor) divest himself of possession and that the other (the lessee) shall come into possession before there is a lease. 51 C.J. S., Landlord and Tenant, § 211, p. 816. Cf. Associated Indemnity Corp. v. Mc-Alexander, 168 Tenn. 424, 435, 79 S.W. 2d 556. Clearly there was no lease in the present case, and this defense fails.

The defendant's Affirmative Defense No. 3, heretofore quoted, is without merit. The claim is made that the policy does not apply under any of the coverages, to liability assumed by the insured under any contract or agreement, and that Carter had contracted with E. T. in the transportation agreement to be liable for all personal injuries or property damage. Among other reasons why this defense is without avail is the fact that E. T. could not escape liability by contract with Carter because it was a legalized common carrier of freight and the vehicle was moving under its permits at the time of the collision with the Buick car. Therefore, the contract is void. War Emergency Co-op. Ass'n v. Widenhouse, 4 Cir., 169 F.2d 403, certiorari denied, 335 U.S. 898, 69 S.Ct. 300, 93 L.Ed. 433.[1]

For the reasons hereinabove indicated, the issues are found in favor of the plaintiff and it will have judgment against defendant for $18,826.08, together with court costs of $307.31 in the Tennessee court and interest from July 18, 1949, the date of the judgment in the Tennessee court of appeals against the insured.

Order accordingly.

---

1. This case seems to be substantial authority for the general conclusions reached.