McVeigh *et al. v.* Brewer.

(*Knoxville*, September Term, 1945.)

Opinion filed October 13, 1945.

FINLAY & CAMPBELL, of Chattanooga, for plaintiff in error, defendant below.

MORGAN & MORGAN and WOOD & DIETZEN, all of Chattanooga, for defendant in error.

MR. SPECIAL JUSTICE WEBB delivered the opinion of the Court.

The plaintiff below, Jack S. Brewer, sued the defendants below, Stone & Webster Engineering Corporation and its driver, Herbert McVeigh, for personal injuries sustained by him in a collision between a truck owned by Keith Williams Company and driven by the plaintiff, and a truck owned by Stone & Webster Engineering Corporation and driven by its co-defendant, Herbert McVeigh. Keith Williams Company also sued for damages to its truck. Both trucks were in operation in line with their respective contracts.

The accident occurred at the intersection of two roadways within the area owned by the United States Government, known as the Volunteer Ordnance Works, near

Chattanooga, Tennessee, usually referred to as the TNT area by reason of the manufacture of that product.

To the declaration filed in behalf of plaintiff, the defendants Stone & Webster Engineering Corporation and McVeigh filed certain special pleas, in addition to a plea of not guilty.

The jury returned a verdict in favor of plaintiff, which verdict, after a *remittitur*, was approved by the trial judge and affirmed by the Court of Appeals. Petition for *certiorari* was granted by this Court and errors assigned.

In assignments of error No. 52 and No. 63, the defendants plead in bar of plaintiff's action that Stone & Webster Engineering Corporation and Herbert McVeigh were not such a "third" or "other person" within the meaning of the Workmen's Compensation Act as would permit them to be sued for negligence at common law, but rather that the right to sue his immediate employer primarily, and the ascending subcontractors secondarily, precluded all other rights and remedies of such plaintiff employee.

It is necessary therefore to show the position of Keith Williams Company and the plaintiff in the project that was being developed. The undisputed facts are as follows:

1. The United States Government owned the land which was purchased for the purpose of manufacturing TNT, an explosive powder.

2. The Government entered into a written contract with Hercules Powder Company to furnish "management service (including subcontracts for architect-engineer services and construction of a new ordnance facility and installation of equipment therein)" for manufacture of TNT, and specifically included the construction of all roads.

So the Hercules Powder Company is the principal contractor. This contract retains complete control and supervision of the entire project as it developed, with the privilege of terminating the contract at any time. This contract was identified with certain letters and numerals that are carried forward to all subcontracts, including the purchase order issued to Smith Stone Corporation by Stone & Webster Engineering Corporation.

Under Article VII-F—Special Requirements (4) the contractor agreed that it will "enter into no subcontract for any portion of the work without the written approval of the Contracting Officer."

This article also declared "Subcontracts are defined as contracts entered into by the Contractor with others which involve the performance, wholly or in part, at the site of the work, of some part of the work described" which includes roads throughout the project.

3. Hercules Powder Company, principal contractor, contracted with the defendant, Stone & Webster Engineering Corporation, for most of the construction, identifying this contract as "Contract No. 1 to principal contract" and with the same numerals and numbers. This contract also recites that the contractor shall "Subcontract, on forms prescribed by the Quartermaster General etc."

Under Article 1-B of said contract, certain facilities were mentioned which included the construction of roads. Again the retention of complete control of the project remains in the Hercules Powder Company and/or the Government and Stone & Webster Engineering Corporation agreed to the same general terms and repeated the definition of "subcontracts" as quoted above.

4. Stone & Webster Engineering Corporation then made contract with Smith Stone Corporation to furnish and deliver crushed limestone to the job site at so much

per cubic yard. This contract is marked "Purchase order Volunteer Ordnance Works, Subcontract No. 1" with the same identifying insignia as on the original contract. It is addressed to Smith Stone Corporation and sets out an order for 175,000 tons of crushed limestone, with approval of Hercules Powder Company, Stone & Webster Engineering Corporation, Smith Stone Corporation, and the Corps of Engineers.

5. Smith Stone Corporation in turn made a contract of employment with Keith Williams Company, who owned some 20 to 45 trucks, for the actual delivery of the crushed stone, at a stipulated price per cubic yard. This contract involved the performance of Smith Stone Corporation's obligation to Stone & Webster Engineering Corporation, at the site of the work on the roads.

6. Jack S. Brewer, plaintiff, was a truck driver for, and paid by, Keith Williams Company, and was operating Keith Williams Company's truck on its way from the quarry to deliver a load of stone on the roadway that was being built within the project.

7. Herbert McVeigh, defendant, was a truck driver employed by his co-defendant, Stone & Webster Engineering Corporation, and was operating its truck as an employee of said corporation at the time of the accident, and at the site of the work on the roads.

The Workmen's Compensation Law, as carried in the Code of Tennessee Section 6851 *et seq.*, provides:

Section 6852(a): " 'Employer' shall include any individual, firm, association or corporation . . . using the services of not less than five persons for pay."

(b). " 'Employee' shall include every person, including a minor, in the service of an employer, as 'employer' is defined in paragraph (a) above, under any contract of hire, apprenticeship, written or implied."

Code Section 6865 provides: "Whenever an injury for which compensation is payable under this chapter shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation or proceed at law against such other person to recover damages, or proceed against both the employer and such other person, but he shall not be entitled to collect from both; and if compensation is awarded under this chapter, the employer having paid the compensation or having become liable therefor, may collect, in his own name or in the name of the injured employee in a suit brought for the purpose, from the other person against whom legal liability for damages exists, the indemnity paid or payable to the injured employee."

Code Section 6866 provides:

"A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject-matter of the contract to the same extent as the immediate employer.

"Any principal, or intermediate contractor, or subcontractor who shall pay compensation under the foregoing provisions may recover the amount paid, from any person who independently of this section, would have been liable to pay compensation to the injured employee, or from any intermediate contractor.

"Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer, but such proceedings shall not constitute a waiver of the employee's rights to recover compensation under this chapter from the principal or intermediate contractor, provided that the collection of

full compensation from one employer shall bar recovery by the employee against any others, nor shall he collect from all a total compensation in excess of the amount for which any of said contractors is liable.

"This section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management."

■ ■ Counsel for plaintiff has earnestly urged that a furnisher of materials to the project is not a contractor within the meaning of this statute. The Court of Appeals approved his position and declared that Keith Williams Company was not a subcontractor but was merely a furnisher, "It had a quarry in which it crushed the stone which, through Keith Williams Company, was delivered as required on the job site." The Court of Appeals then quotes the mechanics and furnishers lien law interpretation of subcontractor as meaning a "person other than a materialman or laborer." There is no mention of a furnisher or materialman in the above statute.

We cannot agree with this distinction as the Legislature made no such distinction in its interpretation of the compensation law, but used the language "a principal, or intermediate contractor, or subcontractor"—all inclusive—without any qualification or without interpretation or definition of the words used. The words used are well recognized words in common use, and with a generally accepted meaning. "Contractor" is one who, for a consideration, undertakes to carry out any part of a project, whether it be to construct a chemical plant or to construct a road incident to the chemical plant, or other employment. We therefore think that a furnisher of stone for the roadway incident to said plant is a subcontractor.

In the mechanics' and furnishers' lien law, the Legislature began (Code, Section 7913):

"In this article, unless the context or subject matter otherwise requires: . . .

" 'Contractor' means a person other than a materialman or laborer who enters into a contract with the owner of real property for improving it . . .

" 'Materialman' or 'furnisher' means any person who, under contract, furnishes material to the owner," etc., thus recognizing that a materialman or furnisher is under contract.

But, in the Workmen's Compensation Law the Legislature did not make any distinction between the various contractors, clearly recognizing that a furnisher is a subcontractor; and the context and subject matter of this act shows clearly that there was no such intention on the part of the Legislature.

The contract made between the United States Government and Hercules Powder Company clearly supports our interpretation when it provided that "Subcontracts are defined as contracts entered into by the contractor with others which involve the performance, wholly or in part, at the site of the work, of some part of the work described." This definition is again repeated in the contract between Hercules Powder Company and Stone & Webster Engineering Corporation.

The purchase order issued by Stone & Webster Engineering Corporation to Smith Stone Corporation, identifies it as a part of the same contract.

Keith Williams Company was an employee of Smith Stone Corporation for the purpose of hauling the stone, after it was crushed, and thereby involved "the performance, wholly or in part, at the site of the work, of some part of the work described."

We therefore think that within the meaning of the Workmen's Compensation Statute (Code, Section 6866) "principal, or intermediate contractor, or subcontractor" includes Keith Williams Company and Jack S. Brewer, as such subcontractors.

This same section was before this Court in the case of *Williams* v. *Buchanan,* 149 Tenn. 639, 261 S. W. 660. In that case the State Highway Commission had turned over to defendant Williams a rock quarry which it owned and granted him the privilege of quarrying therefrom the rock or ballast necessary to be used in the construction of the highway.

Williams employed one John Turner, at the rate of 65 cents per cubic yard for all rock quarried or ricked at the quarry. Defendant Williams retained no control over the manner of quarrying the rock but was only interested in the results.

In that case petitioner Buchanan was employed by Turner and received 55 cents per cubic yard for the rock quarried by him. While sledging rock in said quarry, under his employment with Turner, a piece of rock struck Buchanan in the eye.

To the petition filed for personal injuries against Boyd Williams as the employer, and his compensation carrier, to recover compensation alleged to be due him under the Workmen's Compensation Act, the defendants denied that Buchanan was at the time of said injury an employee of the defendant Williams, but was an employee of John Turner, who was an independent contractor; that therefore the defendants were not liable under the Workmen's Compensation Act to petitioner.

The Court held, in the language of Mr. Justice HALL, as follows (149 Tenn. at page 643, 261 S. W. at page 661):

"We think, under this section of the act, principal contractors are made liable for injuries sustained by employees of subcontractors arising out of and in the course of their employment, whether such subcontractors be independent contractors or otherwise, provided that, at the time of the injury, the employee was engaged upon the subject-matter of the general contract, and provided, further, that the injury occurs on, in, or about the premises on which the principal contractor has undertaken to do work, or which are otherwise under his control or management. It seems to us that no other reasonable construction can be given said section. It will be noted that said section expressly provides that the principal, intermediate, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject-matter of the contract to the same extent as the immediate employer. We think the meaning of said section is not open to doubt, but is plain and unambiguous. The evidence shows that the rock quarry at which petitioner was injured had been turned over to defendant Williams by the State Highway Commission. Williams was operating a rock crusher at said quarry, and was engaged in hauling rock and ballast from said quarry after it had been prepared for use on the highway, and the quarry was subject to his dominion and control. So there can be no room for controversy that petitioner's claim for compensation is clearly within the provisions of section 15 of said act [Code, sec. 6866]."

In the case at bar the plaintiff, Jack S. Brewer, was an employee of Keith Williams Company, who in turn had a contract with Smith Stone Corporation for the actual delivery of the crushed stone, at a stipulated price per cubic yard. Smith Stone Corporation was to deliver

the crushed stone to the job site at so much per cubic yard. In the above case Williams was operating the rock crusher and was engaged in hauling rock and ballast from the quarry, after it had been prepared, for use on the roadway. The Court held, as above quoted in the case of *Williams* v. *Buchanan*, that "independent contractors or otherwise," are such "subcontractors" as are covered by the act "whether such subcontractors be independent contractors or otherwise." This makes the words "principal" or "intermediate contractor" or "subcontractor" all inclusive, covering those which involve the performance, wholly or in part, at the site of the work, or any part of the project to be completed.

In the case at bar, Jack S. Brewer, the plaintiff, and his employer were engaged "upon the subject matter of the general contract" and "the injury occurred on, in, or about the premises on which the principal contractor had undertaken to do work, and which are under his control or management."

This record shows that the Hercules Powder Company kept guards around the property and prevented the public from making use of these roads that were being built for the purpose of manufacturing TNT for the Government, permitting the entrance only of those having business with the contractor or the subcontractors, and only then after rigid examination, identification and written authority.

The roadways that were being built were not old roads, nor a part of the road system of Hamilton County, or the State of Tennessee, but were new roads carved out of property owned by the Government, and being constructed only for the purpose of a completed project which was to manufacture TNT explosives.

The case of *Adams* v. *Hercules Powder Company et al.*, 180 Tenn. 340, 175 S. W. (2d) 319, 151 A. L. R. 1352, is also in point. In that case there were two plaintiffs whose declarations alleged that the defendant, Hercules Powder Company, entered into a contract with the United States of America for the construction and operation of a new ordnance facility to be constructed in Hamilton County, Tennessee, being the same project involved in the case at bar. In that case the two employees of Reid-Hayden, Inc., elected to proceed against the two defendants, Hercules Powder Company and Stone & Webster Engineering Corporation as negligent third persons, at common law. This Court affirmed the sustaining of demurrers filed in those cases.

In his opinion, Mr. Justice NEIL recited (180 Tenn. page 343, 175 S. W. (2d) at page 321, 151 A. L. R. 1352): "It also conclusively appears that they sustained injuries while engaged upon a project in which the defendants were directly interested, they being the principal contractors."

He also quoted with approval (180 Tenn. at page 347, 175 S. W. (2d) at page 322, 151 A. L. R. 1352) the following declaration of law from *Casey* v. *Shane*, 221 App. Div. 660, 666, 225 N. Y. S. 126, 133 (Id., 248 N. Y. 625, 162 N. E. 551):

" 'Either the general contractor stands as an employer, or he does not; if he does, he is immune from liability for negligence; if he does not, he cannot in any circumstance be liable for compensation, . . . Our conclusion is that the general contractor stands as an employer, and his character as such cannot be put on and off at the choice of chance or convenience.' "

He cited the case of *Bristol Telephone Co.* v. *Weaver*, 146 Tenn. 511, 243 S. W. 299, as an example of one who

was not a principal contractor, or an intermediate employer; hence the Gas Company was a third party within the meaning of our statute, and the plaintiff could maintain his suit for damages against the Gas Company at common law.

He further said (180 Tenn. at page 350, 175 S. W. (2d) at page 323, 151 A. L. R. 1352): "If, as we have held, the principal contractor is 'primarily liable' along with the immediate employer, and may be joined in the same suit with him, it is well-nigh inconceivable that he could be thought of as a 'third party' or 'some other party' and liable to suit for damages under the common law."

He also cited with approval the case of *Maxwell* v. *Beck*, 169 Tenn. 315, 318, 87 S. W. (2d) 564, 565, which held "that the words 'to the same extent as the immediate employer' . . . were not intended to limit the liability of the principal, or other contractor, but were inserted for the purpose of imposing upon them liability equal in all respects to the liability imposed, by other provisions of the act, upon immediate statutory employers."

In the case of *Reynolds & Co.* v. *McKnight*, 177 Tenn. 228, 237, 148 S. W. (2d) 357, 360, Chief Justice GREEN said: "The principal contractor and the subordinate contractors being by the statute made liable 'to the same extent' as the immediate employer, they are jointly, or jointly and severally, liable, and under Code section 8611 all of them may be sued in the same action." This language construes the words "principal [contractor], or intermediate contractor, or subcontractor," to include "subordinate contractors". This language would certainly include Keith Williams Company and Jack S. Brewer in the case at bar, who were engaged in the common enterprise.

The case of *Siskin et al.* v. *Johnson*, 151 Tenn. 93, 268 S. W. 630, 632, is not in conflict with this opinion, as in that case the accident did not happen on the premises of R. H. Siskin & Son, nor any place over which it had control, but occurred while Carter's employee Johnson was transferring car wheels from the railroad station to the foundry company and that therefore the injury did not occur "on, in, or about the premises on which the principal contractor has undertaken to execute work, or which are otherwise under his control or management."

But, in the case at bar, the injury occurred "on, in, or about the premises on which the principal contractor had undertaken to execute work, or which were otherwise under its control or management."

██ This opinion is further supported by the fact that the Government retained complete control of this contract, with right to terminate at any time, which brings it well within the ruling of this Court in the case of *Welch* v. *Reiling et al.*, 170 Tenn. 698, 99 S. W. (2d) 216, which held:

"Employer to be relieved from liability for injuries to one doing work for him must show that he relinquished his right to control one doing the work, and that the one doing the work did not have to take employer's orders and instructions." [quoted from headnote]

██ It results that section 6859 of the Code is controlling and the remedy afforded plaintiff against his employer, and other subcontractors, excludes all other rights and remedies; and that Stone & Webster Engineering Corporation and Herbert McVeigh are not liable as third persons to the plaintiff for injuries suffered in this common enterprise.

The assignments of error on above grounds are therefore sustained and the decree of the Court of Appeals is reversed and the suit at law of plaintiff, Jack S. Brewer, dismissed. The costs of the cause likewise will be adjudged against the plaintiff.