556

Brady *et ux. v.* Reed.

(*Knoxville*, Sept. Term, 1947 (May Session, 1948.))

Opinion filed June 12, 1948.

ELY & ELY, of Knoxville, for plaintiffs in error.

W. P. O'NEIL, of Knoxville, for defendant in error.

Mr. Chief Justice Neil delivered the opinion of the Court.

This is a suit to recover an award for compensation and we will refer to the parties as they appeared in the Trial Court, Reed as the petitioner and Brady and wife as the defendants.

The petition was filed on August 22, 1946, and petitioner averred that he was employed as a carpenter by the defendants to work on a house they had under construction on McIntyre Avenue; that while thus employed and while engaged in nailing a lath to the ceiling joist the nail flew out of its place and into his eye, which caused a partial loss of sight.

The petitioner further averred that defendants were partners and were jointly interested in the erection of this and other houses; that their activities consisted of building a number of houses; that they had five or more persons regularly employed, and thus were within the Workmen's Compensation Act of Tennessee. Williams' Code, sec. 6851 et seq.

In addition to seeking an award for compensation, the petitioner asked that a lien be declared upon the property in question.

The defendants filed a plea in abatement to that part of the petition asserting a lien upon the ground that the petition was filed more than ninety days after the alleged injury. On the same day an answer was filed in which it was admitted that defendants were husband and wife but denied "that they were, at the time of petitioner's injury, partners jointly interested in building a number of houses." They also denied that they were at that time employing five or more persons in building operations and

hence were not subject to the Workmen's Compensation Act.

The Trial Judge sustained the petition and entered a judgment for $754.75, from which the defendants appealed to this Court and assigned errors.

The first assignment does not comply with the rules of this Court in that it complains in general terms that the Trial Court erred in not granting a new trial.

The substance of the second assignment is that the Trial Judge was in error in holding that defendants were partners; that he should have held (1) that the husband was engaged in the trucking business and the wife was engaged in the grocery business, and were not jointly engaged in "the building business," and (2) that "they never at any time had five persons regularly employed."

The third assignment complains of error in admitting over seasonable objection "certain testimony as set forth in the motion for a new trial."

We find a sharp conflict in the evidence as to whether Brady and wife were in the "building business" as partners at the time the plaintiff was injured. The proof is also conflicting as to the number of persons regularly employed by them. It is conceded that prior to the employment of petitioner Reed the defendant Brady was engaged in the trucking business as a partner with one Karnes, and that Mrs. Brady was conducting a grocery business. The two defendants had living quarters in the back of the grocery store. According to their testimony, they wanted to move from the grocery store, it being entirely inadequate and inconvenient as a place to live; and it was for this reason they undertook to build the house on McIntyre Avenue, where the petitioner was injured.

While the evidence is both conflicting and confusing upon the two issues of fact herein mentioned, we think there is material evidence to support the opinion and judgment of the Trial Court. There is material evidence to the effect that Raymath Brady's partnership with Karnes had terminated. He was at the McIntyre Avenue place almost every day in the capacity of a worker (it is not material what work he performed) and as supervisor. It is not disputed that Mrs. Brady furnished the money to carry on the business. She paid the bills and met the payroll. It is shown that there was a shortage of building material and to meet this situation they purchased three old houses and used the material, in part, for constructing the McIntyre Avenue house and also other houses. The petitioner Reed was a partner with them in the construction of one of these houses. At the time of his injury he was only an employee.

The contention of the defendants is that they were never in partnership and never had as many as five persons regularly employed at any one time; that only Reed and Gibson were regularly employed and others were employed to work at short intervals, such as to dig out the basement and lay the foundation; that two neighbor boys named Bolling did some odd jobs on the house and were each paid a small sum.

The record is silent as to whether the defendants were granted a permit to construct these houses. It is also silent as to whether or not the defendants applied for and were granted a license, or paid a privilege tax, authorizing them to engage in the business of contracting. When we consider the entire record we find material evidence to justify the conclusion that they were in the "building business." It is not material that one house, the first one constructed, was to be their home and that

the others were to be sold. The defendants contend that all evidence as to the business they carried on subsequent to the construction of the house on McIntyre Avenue was inadmissible, and error to consider it. But we think it is competent as showing the nature and general course of business.

Their original intention, no doubt, was to build them a home. However, in acquiring the material for that purpose, they were compelled to purchase the old houses mentioned and, having a surplus of material, they thereupon decided to erect other houses for sale. They thus were engaged in contracting and building houses.

It was earnestly insisted in the Trial Court and in this Court that defendants were not subject to the Workmen's Compensation Act because they did not have as many as five persons regularly employed at any one time; that all persons employed on the McIntyre Avenue job, other than the the petitioner Reed and his brother-in-law, Gibson were casual employees. In support of this contention it is argued that at least two employees that were counted and considered in the Trial Court were "little neighbor boys" who worked a few hours at a time when not in school, and were paid small sums of money, more or less as a courtesy, etc. But there is evidence to the effect that they were paid by the hour. The petitioner testified they were paid twenty-five or thirty cents an hour. There were two other young men, sons of the defendant Raymath Brady by a former marriage, who were engaged in hauling building material from the three old houses which defendants had purchased from Sears-Roebuck & Company. They were living separate and apart from their father. It is not shown how much they were paid. They did not testify and no reason is

given by defendants as to why they were not called as witnesses.

One of the "little neighbor boys" testified, at defendants' instance, on the motion for a new trial, but no question was asked as to the amount of his compensation. He stated that his brother was nineteen years old and was in the Navy on the day petitioner was injured.

It is clear from the record that in computing the number of persons regularly employed on the day of the injury the Trial Judge counted the petitioner Reed, Gibson, Willie McCoy (colored, who dug the basement), the two Brady boys and the two Bolling boys, making a total of seven persons. It is also insisted by petitioner that one Andrew Jones was employed at the time and was at work on another house, referred to as the Rutledge Pike house; that he (petitioner) was hurt on a Friday, and "Jones and a colored man helping him evidently went to work on Monday."

The argument is made on behalf of the defendants that the two Brady boys and the two Bolling boys should not be counted because they were doing "little odd jobs," and the amount of their compensation did not rise to the dignity of a reward for hire; and for these reasons they should be classified as "casual employees." We cannot accept this argument as controlling. As heretofore observed, Mrs. Brady was the paymaster and in testifying she failed to enlighten the Court as to the amount she paid these boys. In the absence of proof, we are not justified in assuming that because they were "school boys," and worked on days when not in school, that their employment was casual. Nor can we assume that their compensation was nominal. If the work of the two Brady boys in hauling lumber was gratuitous they should

not be counted, but their father, defendant Brady, failed to call them as witnesses.

The amount of compensation paid and the length of time one is employed is not determinative of whether or not he is a regular or a casual employee. Nor is it material that an alleged employee is related to his employer.

Counsel for the defendants seem to argue the point that these "boys" were not "regularly" employed because not employed for any specified time; that for these defendants to be subject to the Workmen's Compensation Law they must have at least five persons regularly employed for each and every day they are in business. This is a mistaken view of the law. It is contrary to the statutory mandate that the courts must give the Act a liberal construction. Moreover, it is our duty, in considering the facts, to give them the most favorable view in support of the petitioner's claim, and a finding of fact by the Trial Judge in compensation cases is not open to review where there is material evidence to support it even "though the preponderance of the evidence be against it." *Vester Gas Range & Mfg. Co.* v. *Leonard*, 148 Tenn. 665, 257 S. W. 395.

Both petitioner's and defendants' counsel have referred us to *Dancy* v. *Abraham Bros. Packing Co.*, 171 Tenn. 311, 102 S. W. (2d) 526, 530, as supporting their respective theories. In that case contention was made that compensation should be disallowed because the petitioner was alleged to be a casual employee. Now, in the instant case, the petitioner was regularly employed and his injury arose out of and in the course of his employment. However, the holding of the Court in the *Dancy Case* as to the meaning of "casual" employment is applicable and we think it supports the petitioner's con-

tention rather than that of the defendants. Both the majority opinion by Justice CHAMBLISS, as well as the dissenting opinion by Justice DEHAVEN, agree that our statute is controlling. The Code sections which apply to the issue now before us are as follows:

" 'Employee' shall include every person, including a minor, in the service of an employer, as 'employer' is defined in paragraph (a) above, under any contract of hire, apprenticeship, written or implied.

.   .   .   .   .   .

"(b) Any person whose employment at the time of injury is casual, that is, one who is not employed in the usual course of trade, business, profession, or occupation, of the employer."

In the *Dancy Case* it was said: "The length of time of the employment is not material." In the dissenting opinion Mr. Justice DEHAVEN correctly observed: "This Court has held that the employee comes within the protection of the statute although the employment be temporary as distinguished from regular employment. *Parks* v. *E. M. Carmell Co.*, 168 Tenn. 385, 79 S. W. (2d) 285; *Gibbons* v. *Roller Estates, Inc.*, 163 Tenn. 373, 43 S. W. (2d) 198."

█ The mere fact that some of the persons who were in the defendants' service were minors and were "picked up" from day to day and not used for a specified time does not exclude them from the class of regular employees as defined by our statutes. So long as they were members of the class who were doing some work that was necessary in carrying on the particular business, they fall within the classification of those "regularly employed."

Now if these employees had been engaged to mow the lawn upon the property where the house was being erected, they could not, by any stretch of the imagination,

be held to be regular employees, because they would not be "employed in the usual course of trade, business," as was said by GREEN, Chief Justice, in *Gibbons v. Roller Estates, Inc.*, 163 Tenn. 373, 376, 43 S. W. (2d) 198. But in the instant case they were employed to perform work that was admittedly a necessary part of the building business and hence were not casual employees.

In the defendants' last assignment of error it is contended that the Trial Court committed reversible error in "admitting upon seasonable objection" the testimony of petitioner Reed and Mrs. Georgia Brady as "set forth in grounds 7, 8, 9, 10 and 11 of the motion for a new trial, all of which appear at large in the transcript on pages 27 to 31, inclusive."

The evidence here referred to was objected to upon the ground that it related to building operations subsequent to the day of petitioner's injury. There was strenuous objection to the introduction of, and cross examination of Mrs. Brady, as to the contents of an answer which she and her husband had filed in a Chancery Court case wherein they averred that the said chancery suit against them "is stopping their activities consisting of the building of a number of houses in which they have a considerable amount of money invested."

We think the evidence was properly admitted. It was competent as tending to show a general course of business. The petitioner testified that a house, other than the one where he was injured, was begun a few days after the injury. It cannot be said with any degree of accuracy as to the day or hour when the defendants commenced their building activities as a business, in which they invested a large sum of money, whether before or after petitioner was injured. There is material evidence,

however, to show that some of the material from the three old houses was used in erecting other houses, as we have heretofore pointed out, including the one which was involved in the Chancery Court case. The defendants had a considerable sum of money invested in these old houses and other building material they were using in their business. We find no merit in the objection that this evidence was inadmissible on the grounds stated by counsel.

All assignments of error are overruled and the judgment of the Circuit Court is affirmed. The petitioner has filed his petition in which he also files the record for writ of error, contending that the Trial Judge committed error in refusing to declare a lien upon the property to secure the payment of his claim. It is not disputed that the petitioner's suit was filed more than ninety days after his injury. It is insisted that the lien is not barred until the claim for compensation is barred. Counsel for petitioner relies upon *Pennington* v. *Webb-Hammock Coal Co.*, 182 Tenn. 33, 184 S. W. (2d) 47, 50, as authority supporting the foregoing insistence. We think the opinion fails to meet the question now before us. The important question decided in that case was that an injured employee who had recovered an award for compensation against the employer thirty-three days before a general creditors' bill was filed against an insolvent employer was entitled, in such general creditors' proceeding, to the satisfaction of compensation award prior to the claims of general creditors.

Had the petitioner filed his suit within ninety days following his injury, under the doctrine of *lis pendens*, it would have been constructive notice to all persons, including creditors of the employer and subsequent pur-

chasers, that the property was subject to his compensation claim. Not having asserted his claim within that time, he waived his lien, but did not lose his priority over general creditors. The assignment is overruled.

Affirmed.

All concur.