HUGH BARKER, d/b/a BLACK COAL COMPANY, ETC., *v.* JOHN WILFORD CURTIS

(*Nashville,* December Term, 1955.)

Opinion filed February 3, 1956.

414

A. A. KELLY, of South Pittsburg, for appellant.

RAULSTON, RAULSTON & SWAFFORD, of Jasper, for appellee.

Mr. Justice Burnett delivered the opinion of the Court.

This is a workmen's compensation case. The only question involved is whether or not the petitioner Curtis was an independent contractor or an employee of the appellant. The Chancellor after having heard the proof in open court determined that Curtis was an employee and fixed his compensation accordingly. An appeal was seasonably prayed and has been perfected. Able briefs have been filed and argument heard and we now have the matter for determination.

The finding and memorandum of the Chancellor is in the record and portions of this finding are apropos and necessary for this decision. The Chancellor found as follows:

"Tennessee Products & Chemical Corporation leased some coal land to Hugh Barker operating as the Black Coal Company. This coal land was developed and mined by Black Coal Company through various operators engaged for this purpose. One of its operators was Mr. Curtis, complainant in this cause.

"One W. J. Travis, Manager of Properties and Operation for Tennessee Products & Chemical Corporation, negotiated the deal for Black Coal Company with Mr. Curtis. It was agreed that Black Coal Company would furnish the tipple, hopper, iron for trackage, mining cars, etc. Mr. Curtis was to furnish crossties and spikes with which to lay the mining car tracks, labor for erecting the tipple, hopper and trackage, he was also to furnish labor and powder (the last mentioned item being commonly furnished by a coal miner) for the job. For every ton of coal mined it was agreed that Mr. Curtis was to receive $3.10 delivered at the tipple, or $3.35, delivered at a river terminal.

"The tipple and hopper were located and erected according to company plans. Mr. Curtis was shown where to open his mines in the side of the mountain, Thus, work was started looking to the mining of coal.

"Mr. Curtis had working for him six miners who he carried on his pay roll for the period of this operation and who he paid. He withheld, reported and paid on these miners working for him both Federal Income Tax and Social Security Tax. He also contracted with United Mine Workers labor organization and paid into the Miners' Pension Fund.

"Mr. Curtis was free to furnish his own trucks or engage haulers to deliver the coal to the two points mentioned. As I recall the testimony, most of the hauling was done by truckers who were paid by Mr. Curtis.

"Each Friday Mr. Curtis went to the company office where he received the amount owing for the coal mined and delivered. It was on one of these trips and while enroute from the mines to the company

office, April 23, 1954, he lost control of his car proceeding over a wet pavement and collided with a truck on the highway. As a result of the accident, he sustained a broken neck, broken ribs, cuts and bruises and was hospitalized in Newell's Hospital, in Chattanooga. * * *

"In addition to the foregoing undisputed facts, Black Coal Company reserved and exercised full control of (1) where the coal was to be mined, (2) how the coal was to be mined, (3) how much coal was to be mined, and (4) where the coal was to be delivered.

"Each week an Engineer for Tennessee Products & Chemical Co. and/or Black Coal Co., checked this operation and made the necessary surveys for further development of the mines. Throughout the operation Mr. Curtis was required to strictly adhere to plans and specifications given him for the mine's development. In particular, the company located the air courses, specified height of hallways, location of rooms adjacent to the entry, width of rooms and doors leading to same, location and size of pillars, etc. * * *

"Perhaps I should also point out that I have not overlooked the fact that after Curtis became disabled and while he remained in the hospital he continued to operate the mines through his brother; and also the fact that he later sold his interest in the mining equipment, etc., for the sum of $1,950.00. I can't attach any more importance to these two facts than I could have attached to Brademeyer sending his son and another helper to wash windows while he remained at home sick some say; or a miner an admitted employee of some company concluding to re-

tire and selling his mining tools, clothes, etc., to another engaged in mining."

After making this very comprehensive finding of fact which is well supported by the record and the material facts therein the Chancellor concluded that Curtis was an employee and not an independent contractor.

■ . There have been many of these cases where the determinative question was whether or not the person was an employee or an independent contractor. Under all of the cases it is recognized that there is no absolute formula whereby it can be determined which a party is, that is, an employee or independent contractor, but the facts of each particular case have to be taken into consideration and from these facts a determination made.

■■ One of the most widely accepted definitions of an independent contractor is:

"One who contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen independent of his employer, and free from any superior authority in the employer to say how the specified work shall be done, or what the laborers shall do as the work progresses; one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains that result." *Odom v. Sanford & Treadway,* 156 Tenn. 202, 299 S. W. 1045, 1046.

This definition goes down through many of our cases and is a fair definition of what an independent contractor is. In the instant case of course there are many badges of an independent contractor but when we take the proof

as a whole as so well analyzed by the able Chancellor it seems clear to us that the Chancellor was correct in concluding that this man was an employee rather than an independent contractor.

In any event the question of whether or not he was an employee or an independent contractor is a question of fact for the Chancellor in this particular case. When such matters are tried to a jury it becomes a question of fact for the jury to determine. *Odom* v. *Sanford & Treadway*, supra; *Tennessee Valley Appliances, Inc.*, v. *Rowden*, 24 Tenn. App. 487, 146 S. W. (2d) 845; *Gulf Refining Co.* v. *Huffman & Weakley*, 155 Tenn. 580, 297 S. W. 199, and others.

In determining whether or not one is an employee or an independent contractor in a suit under the Workmen's Compensation Act, T. C. A. Sec. 50-901 et seq., it is our duty to give the Workmen's Compensation Act a liberal construction in favor of the fact that he is an employee rather than a strict construction. *Frost* v. *Blue Ridge Timber Corp.*, 158 Tenn. 18, 11 S. W. (2d) 860. In *Knoxville Power & Light Co.* v. *Barnes*, 156 Tenn. 184, 188, 299 S. W. 772, 774, it was held,

"Upon review, the most favorable view of the evidence in support of the petitioner's claim must be accepted. If there is material evidence to support the finding of the trial judge, his conclusion upon the facts is final."

Thus it would seem when we find that there is material evidence in the record to support these findings of the able Chancellor then in a compensation case, as this is, this finding of fact by the Chancellor, the trial court, is not open to review by this Court. *Griffith* v. *Goforth*, 184 Tenn. 56, 62, 195 S. W. (2d) 33.

We, in our study of the case think that we could go further and point out other instances in the record that clearly point to the fact that the man is an employee and not an independent contractor. We say this and do this because the able Chancellor probably did not have a written transcript of the evidence before him when he made his finding, but probably made it from his seeing and hearing the witnesses and the notes that he made at the time. When we review this evidence we find in addition to the material evidence to support the finding of the Chancellor the following badges, that to our minds, clearly point to the fact that he was an employee. We think that the evidence clearly shows that Curtis could have been fired at the will of the Coal Company if he had done anything that they thought was out of line with how they thought and directed that the coal should be mined. It must be remembered that this record, insofar as the question of independent contractor is concerned, is made up of the testimony of Curtis, the petitioner and of Travis who was really in effect a silent partner with Barker in the operation of the coal company. All the way through Curtis' testimony he testifies time and again as to conversations and things that he said to Barker. Barker was present at the trial and did not take the witness stand to contradict any of the statements that Curtis made. Clearly such being the case any statement that Curtis made in reference to what Barker told him must be taken by the Court as true. It is true Curtis did not testify that he made the original contract with Barker, this according to the testimony of Travis was made by Travis. Travis' testimony though clearly leads one to believe that he is primarily testifying as the manager of the Tennessee Products Company rather than a partner of Barker in the Black Coal Company.

When we thus consider this testimony, Curtis at different places testifies that he could have been fired at any time they wanted to, then he also says that Barker told him that they had compensation on Curtis. This fact is also supported too by the statement of the insurance agent that they did take out this conpensation coverage. The insurance agent uses the term several times that Cutis was covered as an employee. At other times he used him as one of the operators of these mines for the Black Coal Company.

The fact that this premium was paid on Curtis in and of itself is without probative value. *Weeks* v. *McConnell,* 1954, 196 Tenn. 110, 264 S. W. (2d) 573. In this case though we have more than that. It is true that it is the contention of counsel in his able argument of the case for the Coal Company or really the insurance company, that this position should be taken about it, and this is probably true from Travis' testimony, but we think the fact that Curtis testifies that Barker told him that they had insurance on it and then that when this insurance agent says that he was covered as an employee, this could have had some effect in that it is some evidence of the fact by him having been told this by Barker the real operator of the Black Coal Company that he was covered as an employee and was an employee. The fact is his salary or wages were fixed at $300 a month or $75 per week for the work that he did for this coal company.

Incidentally, too, it is rather interesting to observe from this testimony that the Black Coal Company had a spread of about 20¢ a ton on the price of coal for what they got for it after it was mined and delivered by Curtis from the Tennessee Products Company. Travis says two or three times that the Black Coal Company made about 5¢ a ton on it, the inference is that the only responsibility

they had was to write compensation insurance on Curtis and those people that he had working for him.

■ And too, Travis' testimony which is the only testimony offered by the Coal Company other than the deposition of a doctor, does not overcome the presumption within itself of the fact that where the employment appears he is presumed to be a servant rather than an independent contractor. *D. M. Rose & Co.* v. *Snyder,* 185 Tenn. 499, 206 S. W. (2d) 897, 904.

A long time ago this Court in *Finley* v. *Keisling,* 151 Tenn. 464, 270 S. W. 629, 632, said:

"Where the power to direct and supervise the work is reserved, under practically all of the authorities, the contractee is a servant, and not an independent contractor."

This is still true. Of course the contention here is that the power to control this work of Curtis was limited but when we take the work as a whole, the really essential things, the main and important things in doing this work all except the actual, physical labor of getting it out and putting it in a truck and hauling it, was reserved to the Coal Company or their immediate superior Tennessee Products Corporation under whatever their contract was with the Coal Company. We think it is rather obvious that there really was that reservation of control which controlled the thing in the main and the thing that Curtis did was more or less a menial part.

This to us, as are all of these independent contractor cases, has been a rather interesting proposition. After much thought though we are convinced that the Chancellor was right and the decree below will be affirmed with costs.