Thomas Clendening

*v.*

London Assurance Co.

(*Nashville,* December Term, 1959.)

Opinion filed March 11, 1960.

Rehearing denied June 6, 1960.

See 337 S.W. 2d. 603.

602

C. ALLEN HIGH and C. HOUSTON SAGER, Nashville, for plaintiff.

MANIER, CROUCH & WHITE, Nashville, for defendant.

MR. JUSTICE FELTS delivered the opinion of the Court.

This is a suit for workmen's compensation. Plaintiff alleged that R. D. Trammel was engaged in the business of building houses and contracted with Jones, Cantrell & Jones to do the brick work; that they employed plaintiff to help lay the brick, and while doing this, the scaffold on which he was working collapsed, he fell, and sustained injuries; and that Trammel was the "principal contractor" and his insurer, the defendant, was liable, under section 15 of the Act. T.C.A. sec. 50-915.

Defendant in its answer admitted that Trammel was engaged in building houses, operating under the Work-

men's Compensation Act, and defendant was his insurer. It also admitted he was building the house in question, but averred he was building it as "owner," not as general or principal contractor; that he had let the brick work to Jones, Cantrell & Jones as independent contractors; and it denied that plaintiff was his employee or that it was liable for compensation.

At the close of plaintiff's proof, the Trial Judge, upon defendant's motion, entered a decree adjudging that defendant was not liable; that plaintiff's proof showed that defendant's insured, Trammel, was building the house as owner and not as a "principal or intermediate, or subcontractor"; and that plaintiff was not an employee of Trammel but an employee of the independent contractor.

Plaintiff appealed in error and insists that the proof established, as a matter of law, that Trammel, in the course of his business of building houses, was building this house as general contractor for Walton L. Peace and wife and was, therefore, the "principal contractor" within section 15 of the Act, and that his insurer, standing in his place, is liable for compensation to plaintiff as an employee of his subcontractor.

■ It is true in a compensation case the Trial Judge's finding of fact, if supported by any material evidence, is not open to review by us. *Vester Gas Range & Mfg. Co. v. Leonard,* 148 Tenn. 665, 672, 257 S.W. 395; *Storie v. Taylor Supply Co.,* 190 Tenn. 149, 152, 228 S.W.2d 94; *Barker v. Curtis,* 199 Tenn. 413, 419, 287 S.W.2d 43.

■ We are charged, however, with the duty of reviewing his conclusions of law, and, in so doing, must liberally construe and apply the Act in favor of the per-

sons entitled to its benefits in order to accomplish its purpose and intent. T.C.A. sec. 50-918. *Maxwell v. Beck,* 169 Tenn. 315, 87 S.W.2d 564; *Turner v. Bluff City Lumber Co.,* 189 Tenn. 621, 623, 227 S.W.2d 1, 2; *Giles County v. Rainey,* 195 Tenn. 239, 243, 258 S.W.2d 774.

The undisputed facts appearing upon this record are that R. D. Trammel was a contractor engaged in the building business, operating within the Workmen's Compensation Act, with defendant as his insurer. In the course of such business, he would have a lot transferred to himself and wife, and contract to build a house on it and convey it to another person. He did this in the case of nine different lots in various subdivisions in Davidson County during the period from June 1958 to February 1959.

One of these nine was the lot in question, Lot No. 367 in the plan of the Belshire Estates. On July 8, 1958, Trammel made a written contract with Walton L. Peace and wife to build a house on this lot and convey it to them for $15,150, $3,650 to be paid in cash and the balance by obtaining a GI Loan on the house in the sum of $11,500. It was understood that when this loan was authorized, the lot would be transferred to Trammel, and he would erect a house on it and convey it to Peace and wife. Among other things, this contract provided:

"The seller [Trammel and wife] further agrees as a condition to this contract to build said house according to attached plans and specifications and will be a duplicate of house built by Raymond D. Trammel on Lot No. 1 Liberty Lane with the following changes: [setting them out]"

As stated, this contract between Trammel and Peace was dated July 8, 1958. The GI Loan was authorized August 15, the lot was transferred to Trammel and wife August 27, 1958, and shortly thereafter he began constructing the house pursuant to this contract. He contracted with Jones, Cantrell & Jones to do the brick work at so much per thousand; and they employed plaintiff to help lay the brick at a certain price per thousand.

While Trammel was building this house for Peace and wife, he was also building a number of other houses for other persons; and he contracted with Jones, Cantrell & Jones to do the brick work in these other houses; and they employed plaintiff to help do that work. Plaintiff would work on these different projects, as directed by Trammel. In this way, he had worked on ''seven different houses'' during the period of three months prior to his injury, which occurred November 21, 1958.

During Trammel's construction of this house for Peace and wife, Trammel made a number of changes in the plans and specifications which had been mutually agreed to by him and Peace. He would come to the building every day or so to supervise and inspect the work, and was present on the premises at the time of the accident which resulted in plaintiff's injury. Trammel completed this house, according to his contract with Peace and wife and he and his wife conveyed it to Peace and wife by deed dated January 5, 1959.

The basis of liability under the Workmen's Compensation Act is the employer-employee relation. Section 2 broadly defines ''employer'' and ''employee'' (T.C.A. sec. 50-902(a, b)); and we have many cases denying the injured workman compensation because he

was *not an "employee" but an "independent contractor."* See *Odom v. Sandford & Treadway,* 156 Tenn. 202, 299 S.W. 1045, 1046; *Barker v. Curtis,* supra; *Kamarad v. Parkes,* 201 Tenn. 566, 572, 300 S.W.2d 922.

■ Section 15 of the Act, however, here invoked, somewhat broadens the injured employee's right to compensation. It allows him to look not only to his own employer but to any other contractor—any "principal, or intermediate contractor, or subcontractor"—on the project where he was at work and his injury occurred *(Reynolds & Co. v. McKnight,* 177 Tenn. 228, 237, 148 S.W.2d 357, 360). We quote the parts of that section here pertinent.

"A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject-matter of the contract to the same extent as the immediate employer * * *.

"This section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management" (T.C.A., sec. 50-915).

Thus, under this section, the general or principal contractor is liable for compensation for an injury, occurring under the conditions stated, to any employee of his subcontractor, even though the latter was an "independent contractor." That is, such an injured workman need not be an employee of the principal contractor; it is enough if he was an *employee* of any subcontractor on the project. *Williams v. Buchanan,* 149 Tenn. 639, 643, 261 S.W. 660, 661; *McVeigh v. Brewer,* 182 Tenn. 683, 691-693, 189 S.W.2d 812, 815-816.

■ Upon the undisputed facts of this case, it is clear that plaintiff was an employee of the firm of Jones, Cantrell & Jones in laying the brick in this house. The fact that he was paid so much per thousand did not make him an independent contractor or prevent his being an employee of that firm. *D. M. Rose & Co. v. Snyder,* 185 Tenn. 499, 514-516, 206 S.W.2d 897, 904-905, and cases there cited.

■ It is also clear that his injury arose out of and in the course of his employment and occurred on the premises and in the house which Trammel was building and while he was present on the project. Plaintiff was, therefore, entitled to look to Trammel or his insurer, the defendant, for compensation under section 15, if Trammel was the "principal contractor," within the meaning of that section.

■ We think there can be no doubt that he was such principal contractor. He was a contractor engaged in building houses, operating under the Workmen's Compensation Act, with defendant as his insurer; and was building a number of houses for others, including this one under his *contract* with Peace and wife to build it for them. That is, he was the "principal contractor," had "undertaken to execute [the] work," was in control, and present on the project when plaintiff's injury occurred.

It is insisted for defendant, however, and the Trial Judge seems to have held, that Trammel, by taking the title to this lot in the name of himself and wife became the owner and was building the house as "owner," and not as "principal or intermediate contractor or subcon-

tractor," within section 15; and that, therefore, neither he nor his insurer was liable under the Workmen's Compensation Act.

This argument ignores the fact that defendant's insured contracted to build this house for Peace and wife, and was thus the principal contractor. To construe this section so as to exempt a contractor in such circumstances would enable principal contractors to evade the Act and defeat its purpose, simply by taking title in themselves pending performance of their contracts.

■ Such evasion will not be permitted. *Maxwell v. Beck,* supra. There, the principal contractor, sued by an employee of a subcontractor employing less than five persons, sought to escape liability on the ground that under section 15 he was liable only "to the same extent as the immediate contractor," and that since the latter was not liable, he was not. Overruling this contention, the Court said [169 Tenn. 315, 87 S.W.2d 565.]:

"To limit the liability thus created [by sec. 15] to cases where the immediate employer is liable under the act, would place it within the power of the principal contractor to evade the act by letting the work to subcontractors who would stay beyond the reach of the statute by employing less than five persons and not electing to accept the act. Such construction would be hostile to the very purpose and intent of the act.

\* \* \* \* \* \*

"* * * The clear intent and purpose of the Legislature in the enactment of the above section was to insure, as far as possible, to all workmen, so engaged,

payment according to the schedule of benefits provided elsewhere in the act, when injured in the course of their employment.''

In *Brady v. Reed,* 186 Tenn. 556, 212 S.W.2d 378, Brady and wife were engaged in the ''building business,'' employing more than five persons, and were building a house on their lot for their own use as a home. Reed, employed as a carpenter in the work, was driving a nail, which flew out, struck, and injured his eye. Holding that he was entitled to compensation, the Court said:

''When we consider the entire record we find material evidence to justify the conclusion that they were in the 'building business.' *It is not material that one house,* the first one constructed, *was to be their home and that the others were to be sold''* (Italics ours) 186 Tenn. 560-561, 212 S.W.2d 380.

In *Wood v. Dean,* 194 Tenn. 663, 254 S.W.2d 751, a partnership, engaged in buying lots, building houses thereon, and selling them, contracted with McMahan, owner of a bulldozer, to grade a lot held in the name of one of the partners. Dean, an employee of McMahan, injured in unloading the bulldozer near the lot, sued the firm and McMahan. The latter was not liable as he had less than five employees; but the firm was, nevertheless, held liable as the principal contractor.

Defendant cities and relies on *Siskin v. Johnson,* 151 Tenn. 93, 268 S.W. 630; *Odom v. Sanford & Treadway,* supra; and *International Harvester Co. v. Sartain,* 32 Tenn. App. 425, 222 S.W.2d 854.

On examination it will be found that none of these cases is in point, and that each of them decisively differs

in its facts from the case before us. In each of them the defendant sought to be held as principal contractor had not contracted or undertaken to do any work for another at the place where the workman's injury occurred, as defendant's insured had done in this case.

The decree of the Trial Court is reversed and a decree will be entered here adjudging defendant liable to plaintiff for compensation and remanding the case to the Circuit Court to ascertain the amount thereof and for such other proceedings as may be necessary, not inconsistent with this opinion. The costs are adjudged against defendant.

## On Petition to Rehear

FELTS, JUSTICE.

Defendant has filed a petition to rehear complaining of our holding, and asserting that our opinion is based upon misinterpretations of the proof in a number of particulars:

[1] Petitioner complains that we stated (supra, op. 336 S.W.2d at page 537) that Jones, Cantrell & Jones employed plaintiff to help lay the brick "at so much per thousand," while the proof showed it was "at $2.25 an hour." This was an inadvertence on our part, but it was not material; for in either case, under the proof, plaintiff was their *"employee"* (*D. M. Rose & Co. v. Snyder,* supra, 185 Tenn. 499, 206 S.W.2d 897), as the petition itself concedes (Pet. 2-3).

[2] Another complaint is upon our statement that Trammel was a contractor in the business of building houses; that in the course of such business he would have a lot transferred to himself and wife, and would contract

with another person to build a house on it and convey it to him; and that, during the period involved, Trammel "did this in the case of nine different lots, including the one here in question."

It is said that the quoted part of the above statement is unsupported by the proof; that the stipulation (Ex. 3 to B. E.) shows that though the nine lots mentioned were transferred to Trammel and wife, only four of them were shown to have been conveyed by them to others, and there was no proof that he built on any of them except the one here involved.

It is true this part of the statement was not accurate as to the other eight lots but it was correct as to the one here in question; and, we think, this inaccuracy was immaterial in view of the admissions in defendant's answer and of plaintiff's proof, which show that its insured, Trammel, was a contractor in the building business, operating under the Workmen's Compensation Act with defendant as his insurer; and that *he built this house* as contractor for Peace and wife.

This contract was made on a printed form which appears to have been in regular use by Trammel in his business. It consisted of a promise by him (and wife) to Peace and wife (1) to convey to them a "house *to be built*" on the lot (describing the lot) and (2) "*to build said house according to attached plans and specifications*," for $15,150, $3,650 to be paid in cash and the rest by the proceeds of a GI Loan on the house for $11,500.

The contract was conditioned upon Peace obtaining this GI Loan on the property; and it was understood that when the loan was approved, the Union Trust Com-

pany, then owner of the lot, would deed it to Trammel and wife, and he would build the house and deed it to Peace. This condition was fulfilled and the contract performed.

The contract was dated June 8, 1958, the GI Loan approved August 15th, the lot deeded to Trammel and wife August 27, 1958, and in a month or so he began building the house for Peace and wife under his *contract to built it for them.* He sublet the brick work to Jones, Cantrell & Jones, they employed plaintiff, and while doing this work, he was injured on the premises, Trammel being present.

It appears from the record this case was tried below upon the theory that the above facts were the truth of the case, and the only defense relied on by defendant was that since its insured, Trammel, held the legal title, he was building the house *"as owner,"* and not as "general or principal contractor," under section 15 of the Act (T.C.A. sec. 50-915); and that the relation between him and Jones, Cantrell & Jones was as "owner" and "independent contractor," and he was not liable to their employee, plaintiff, under section 15.

This theory of its defense was stated by defendant's learned counsel a number of times in the course of the trial, in substance as follows:

"* * * Our proof will be in accord with the answer, that this was his own property and he was building the house on it for himself. I don't mean to live in, I never said that at all, but he was building it with the anticipation of selling it, and he did sell it, but he was the *one that was constructing the house.* He was not building it for anybody" (italics ours) (B.E., p. 3).

Also:

" * * * the issue in this lawsuit is that this house was Mr. Trammel's own house, that he was the owner, not the principal contractor, and I think that [proof of other houses he built] would tend to confuse it. If he [witness Clendening] knows how many he constructed as a contractor, which we admit that he did on certain jobs, or if he knows how many as owner, that would be proper, but if he doesn't he is throwing the whole thing into a pot and that is very sharply controverted" (B.E., p. 17).

Again:

"It's my position * * * that in this particular transaction Mr. Trammel * * * was the owner of the house * * * that he took the title * * * in his and his wife's name, that it was his property, *for the sole purpose of being able to get a construction loan as the Loan Companies demanded that it be handled that way*" (italics ours) (B.E., p. 30).

And it appears this theory of defense was submitted to the Trial Judge and he viewed the case as presenting only a question of law, viz.: whether Trammel, in building the house in the method adopted by him, should be held to have acted as "owner," outside the Workmen's Compensation Act, or, as "general or principal contractor," within section 15 of the Act. Among other things, the Trial Judge said:

"This involves a whole method of doing business of a great section of our business community here. * * * So this is *not an isolated instance* at all. This is the gateway into what might be a series of decisions in-

volving the whole system of doing business of these house builders'' (Italics ours) (B.E. sec. 64).

And the Trial Judge apparently concluded that, by taking title in himself while building this house for Peace and wife, *under his contract to build it for them,* Trammel was building it as ''owner,'' not as ''contractor''; and that by this ''method of doing business,'' he put himself outside the Workmen's Compensation Act.

Defendant defends this ruling by treating Trammel's taking title to himself as the decisive factor in the case. It says in its petition that our ''opinion, when analyzed, necessarily holds that an owner can be a principal contractor with himself, and certainly if as all the evidence shows by stipulation that Trammel was the owner, then this Court cannot hold that he can contract with himself, so as to become the principal contractor.''

We did not hold he could contract with himself. We held he contracted with Peace and wife to build this house on this lot *for them* and deed it to them. In our opinion, his taking title to it while building it, for them, was merely a method of financing the construction and securing his interest pending construction. His position was more like that of mortgagee than owner.

We know that the construction of houses financed largely by governmental aid, is a large part of our industry, in which many are employed. If by merely taking title to themselves pending performance of their contracts, if by the method of doing business here pursued by Trammel, building contractors may exempt themselves from the Workmen's Compensation Act, many employees for whose protection the Act was intended would be deprived of its benefits.

It is our duty to construe the Act liberally in favor of those entitled to its benefits. *Maxwell v. Beck,* supra, 169 Tenn. 315, 87 S.W.2d 564; *Brady v. Reed,* supra, 186 Tenn. 556, 212 S.W.2d 378; *Giles County v. Rainey,* supra, 195 Tenn. 239, 258 S.W.2d 774. So construing it, we think that merely by taking title in themselves during performance of their contracts, building contractors may not evade the Act and deprive employees of its benefits.

Finally, petitioner insists that we should remand the case for a *new trial,* because it was disposed of on its motion to dismiss at the close of plaintiff's proof; and that to enter a decree in this Court, adjudging defendant liable, would deprive it of its day in court.

We do not think so. It does not appear that defendant denied, but instead admitted, in its answer and on the trial, the essential facts on which the case was submitted. Its defense was rather one of law: that, by taking title in himself while building the house under his contract with Peace and wife, Trammel acted as "owner," not as contractor, so as to exempt himself from the Workmen's Compensation Act.

On these facts, we think defendant is liable, and that justice would not be furthered by remanding the case for a new trial on this issue of liability; for on such a remand, we think, defendant could not take a position inconsistent with its theory on which the case was tried below and here. In *Heggie v. Hayes,* 141 Tenn. 219, 227, 208 S.W. 605, 607, 3 A.L.R. 150, Mr. (later Chief) Justice Green said:

"'A new trial will not be granted * * * to enable a defendant to avail himself of a defense which was

within the issues but not presented at the trial; or to make a defense inconsistent with the one presented, or contradictory to admissions made, as points tacitly conceded.' 29 Cyc., 852.''

Also, this is a workmen's compensation case, which should be ''expedited,'' speedily determined, and not prolonged and delayed by continued litigation (T.C.A. sec. 50-1018), and should not be remanded for a new trial in the absence of a showing of good cause.

Moreover, the statute requires us, on reversal, to render such judgment here, without a remand, as should have been rendered by the court below, ''except where the damages to be assessed are uncertain * * *'' (T.C.A. sec. 27-326), and except where we can see that injustice would be done thereby. *Sledge v. Hunt,* 157 Tenn. 606, 612, 12 S.W.2d 529; *Brooks v. Memphis Compress & Storage Co.,* 188 Tenn. 115, 216 S.W.2d 746, 749.

For these reasons, the petition to rehear is denied at the cost of petitioner.