JOE SMART

*v.*

JAMES EMBRY, et al.

(*Nashville,* December Term, 1960.)

Opinion filed July 26, 1961.

WILLIAM A. MCTIGHE, Memphis, for petitioner.

NELSON, NORVELL & FLOYD, FRED IVY, JR., and RALPH W. FARMER, Memphis, for defendants.

MR. JUSTICE FELTS delivered the opinion of the Court.

This is an appeal in error by petitioner, Joe Smart, from a judgment of the Chancery Court dismissing his petition to recover compensation and medical benefits, under the Workmen's Compensation Law, for an injury to his left hand suffered by accident while he was cutting plywood with a saw on the project where he was at work.

Petitioner's theory was that the defendant S. & S. Construction Company was the principal contractor building a house in Shelby County, and defendant American Surety Company was its Workmen's Compensation insurer; that defendant James Embry was its sub-contractor on the work, and petitioner was an employee of Embry; and that defendants are liable under sec. 15 of the Workmen's Compensation Law (T.C.A. sec. 50-915).

Defendants each denied liability, and denied that petitioner was an employee of any of defendants, and averred that he was an independent contractor, to whom the cornice work of the house had been sublet by Embry, and who furnished his own tools and employed his own men in the performance of his part of the work for an agreed lump sum contract price.

The Chancellor, in a careful and well-considered opinion, found that petitioner was not an employee of any of defendants, but was a subcontractor, not entitled to recover under the Workmen's Compensation Law, and dismissed the suit. So, the sole determinative question here is whether petitioner was an employee of Embry or a subcontractor under Embry. The Chancellor's findings on this issue may be summarized as follows:

The S. & S. Construction Company was engaged in the business of constructing houses. It would contract to furnish the materials and build a house complete, according to plans and specifications agreed upon with the owner. It furnished the materials but did no part of the work itself. Instead, it sublet the concrete work, the plumbing, the framing, the roof trim, and all other parts of the construction to different subcontractors, each of whom agreed to perform his part of the work according to the plans and specifications.

While thus engaged in building a number of houses, including the house here in question, the S. & S. Construction Company had sublet separate parts of the work—the concrete, plumbing, roof trim, to other contractors; and had sublet the framing of these houses to defendant Embry, who agreed to do the same according to the plans and specifications and who had his own employees whom he paid so much per hour.

On some of these jobs Embry had fallen behind in the time or progress schedule set for the work under his subcontract with the S. & S. Construction Company; and in order to meet this schedule, Embry sublet, or orally contracted with petitioner Smart to do the "cornicing" work of a number of these houses, including the one here in-

volved. This cornicing work, according to usage in the building trade, included running outside trim, fitting the outside doors, panel, and ceiling, and the eaves work.

Petitioner's contract with Embry was that he would do this cornicing work according to the plans and specifications, a copy of which was furnished him, and was to be paid a flat or lump sum price for the cornicing work, such price being agreed by Embry and petitioner for each house, according to the size and type of the house. The lump sum price to be paid by Embry to petitioner for doing the cornicing work on the house in question was $175.

Petitioner was a cornice man and had been engaged in cornice work for five years. He testified himself that he "went by job and traded for the job." He furnished his own tools and his own employees, whom he paid so much per hour and hired and fired at will. As he was doing this cornice work, Embry paid him so much per week, based on an estimate of the amount of work done as a percentage of the contract price.

The S. & S. Construction Company carried workmen's compensation insurance to cover the employees of its subcontractors, including the employees of Embry; but did not carry such insurance on petitioner or his employees. The Company daily sent its inspector to the jobs to inspect the work to see that it was done according to plans and specifications; but it did not control, or reserve the right to control, the methods of doing the work, except to see that the result met the plans and specifications.

█ The basis of liability under the Workmen's Compensation Law is the employer-employee relation. Section 2 broadly defines "employer" and "employee' (T.

C.A. sec. 50-902); and compensation is denied where the claimant was not an employee but an independent contractor. *Clendening v. London Assurance Co.,* 206 Tenn. 601, 336 S.W.2d 535, 537; *Odom v. Sanford & Treadway,* 156 Tenn. 202, 299 S.W. 1045, 1046; *Barker v. Curtis,* 199 Tenn. 413, 419, 287 S.W.2d 43.

As said in *Barker v. Curtis,* supra, 199 Tenn. 418, 287 S.W.2d 45: ''One of the most widely accepted definitions of an independent contractor is:

'' 'One who contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen independent of his employer, and free from any superior authority in the employer to say how the specified work shall be done, or what the laborers shall do as the work progresses; one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains that result.' *Odom v. Sanford & Treadway,* 156 Tenn. 202, 299 S.W. 1045, 1046.''

■ It would not be helpful to review the cases determining the issue of whether the compensation claimant was an employee or an independent contractor; for each case must depend upon its own facts and ordinarily there is no one infallible test, but all circumstances must be looked to; and the question is ordinarily one of fact. *Odom v. Sanford & Treadway,* supra, 156 Tenn. 207, 299 S.W. 1046; *Barker v. Curtis,* supra, 199 Tenn. 418, 419, 287 S.W.2d 45, 46.

■ The mere fact that the principal contractor reserves a right to supervise or inspect the work during its

performance, does not make the subcontractor an employee or mere servant, where there is no right of control of the method of performance, except to see that the end result conforms to the plans and specifications. *Odom v. Sanford & Treadway,* supra, 156 Tenn. 209, 210, 299 S.W. 1046, 1047.

We think the evidence fully supports the Chancellor's findings of the facts and such findings are not open to review by us. *Clendening v. London Assurance Co.,* supra, 206 Tenn. 601, 336 S.W.2d 536, and cases there cited. We also think that the authorities upon the question here at issue fully support the Chancellor's conclusion that petitioner was not an employee of any of the defendants, but was an independent contractor; and not entitled to recover under the Workmen's Compensation Law.

Affirmed.