FILED

March 18, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:05 AM



## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| **Kevin Hartley** ) | **Docket No.: 2015-02-0283** |
| **Employee,** ) | |
| ) | |
| **v.** ) | **State File Number: 64795-2015** |
| **Alan Hammons (General Contractor)** ) | |
| **Employer,** ) | **Judge Brian K. Addington** |
| **And** ) | |
| **Builders Mutual** ) | |
| **Insurance Carrier.** ) | |
| ) | |

---

## EXPEDITED HEARING ORDER DETERMINING MR. HARTLEY'S EMPLOYMENT STATUS AND DENYING WORKERS' COMPENSATION BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on March 9, 2016, on the Request for Expedited Hearing filed by Kevin Hartley pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is the work relationship between Mr. Hartley and Brian Glover, the brick mason whom the general contractor, Mr. Hammons, contracted with on a construction project. The central legal issue is whether Mr. Hartley was an employee of Mr. Glover or an independent contractor at the time of his July 1, 2015 work injury. Mr. Glover had no workers' compensation insurance coverage, prompting Mr. Hartley to seek workers' compensation benefits against Mr. Hammons.[1] For the reasons set forth below, the Court finds Mr. Hartley is an independent contractor, not an employee covered under the Workers' Compensation Law.

### History of Claim

Employee, Kevin Hartley, is a thirty-eight-year-old resident of Johnson County, Tennessee. (T.R. 1 at 1.) He testified he is an experienced brick mason's helper. During the first week of June 2015, Mr. Hartley passed by a job site in Mountain City, Tennessee, where workers were in the process of constructing two adjacent restaurants.

---

[1] Additional information regarding the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

(Ex. 1.) He stopped and spoke with Mr. Glover to see if he had work available. *Id.*

Mr. Glover testified he is the brick mason the general contractor, Mr. Hammons, engaged to perform brick work at the site. Mr. Glover informed Mr. Hartley he needed a mason's helper, whose job it was to make "mud" (mortar), transport bricks to the brick masons, and erect/tear down scaffolding. Mr. Hartley agreed to work in that capacity at the rate of $12.00 per hour. *Id.*

On July 1, 2015, while working on the job site, Mr. Hartley climbed an existing scaffold. *Id.* He testified that as he stepped onto one of the scaffold boards, it broke, causing him to fall thirty to thirty-five feet onto concrete below. Mr. Hartley sustained serious injuries to both shoulders, his pelvis, his right leg, and left foot as a result of the accident. *Id.*

### Kevin Hartley's Testimony

Mr. Hartley testified that he typically worked eight hours per day, weather permitting. He was paid hourly and could not hire his own workers. Mr. Glover was on the job site with him and instructed him on which tasks to perform. Mr. Hartley could not tell other workers on the site what to do; Mr. Glover did that.

Mr. Hartley brought his own masonry tools to the job site, including a trowel, a brick hammer, tape, a straight edge, and joiners. However, he did not supply brick or mortar used on the project. He did not place or receive work orders, nor did he bid the job. Mr. Glover paid him in cash at the end of each work week and did not withhold taxes. Mr. Hartley did not receive a W-2 or 1099. He acknowledged that Mr. Glover did not tell him how to mix "mud" or how to do the job of a mason's helper.

When a friend inquired as to available work on the job site, Mr. Hartley instructed him to discuss the issue with Mr. Glover. Mr. Hartley did not know he could bring another worker onto the site, and that such decisions were Mr. Glover's. He stated that he did not leave the job site to work elsewhere, and that when Mr. Glover attended another job site, Mr. Hartley did not work. Mr. Hartley denied that he performed masonry work in Johnson City for a few days and later returned to Mr. Glover's work site. He confirmed that he had no explicit work agreement with Mr. Hammons.

### Amber Yarber's Testimony

Ms. Yarber testified on Mr. Hartley's behalf. She stated that she took Stephen Gorsline to Mr. Hartley's job site to find work. While Mr. Hartley worked, she and Mr. Gorsline waited for Mr. Glover, but he did not appear. After several minutes, she and Mr. Gorsline left. Ms. Yarber asserted that she took Mr. Gorsline back to the job site the next day. Mr. Glover arrived at the job site shortly thereafter, and Mr. Gorsline spoke

2

independently to Mr. Glover about available work. Mr. Glover had none.

Ms. Yarber further testified that Mr. Hartley was not able to hire Mr. Gorsline. She added that it was her understanding that Mr. Hartley was required to arrive at work at 8:00 or 8:30 each morning and could not come and go from the job site as he pleased. Ms. Yarber also corrected a point in her affidavit. She clarified that she did not observe Mr. Glover directing workers while she was at the job site, as stated in her affidavit.

*Brian Glover's Testimony*

Mr. Glover is a self-employed mason who has no employees. He has a business license. In 2015, before the subject work accident, he registered under the Bureau's Workers' Compensation Exemption Registry.

Mr. Hammons approached him about laying cinder blocks for two new restaurants he was building in Mountain City, Tennessee. The two men reached a verbal agreement wherein Mr. Glover would be paid at a certain rate for each brick laid. At the end of each work week, Mr. Glover submitted an invoice to Mr. Hammons for the work performed. He would then cash Mr. Hammons' check and pay each worker according to how much work they reported. Each worker kept up with his own time and reported it to Mr. Glover at the end of the week. Mr. Glover made no tax withholding, nor did he provide a 1099 or W-2 to the workers.

Mr. Glover confirmed that, while Mr. Hammons determined what materials were needed for the work, it was up to him [Mr. Glover] to arrange for masons and mason's helpers to get the job done. Mr. Glover was responsible for determining what to pay each worker. He expected each mason and mason's helper to perform the job as they agreed, and if someone exhibited an on-going attendance problem, he had the ability to replace the worker. He acknowledged that he had general direction over those laying block.

When he accepted responsibility for the masonry project, Mr. Glover contacted at least three masons he had worked with before and arranged for them to arrive at the site to lay block. The masons each had their own tools, and they collectively determined a work schedule among themselves. There was no set starting or quitting time. The masons worked until they felt they had reached a good stopping point each day. Mr. Glover had another construction job he was working at the same time in Johnson City, Tennessee.

Mr. Glover did not know Mr. Hartley before the subject work project. He confirmed Mr. Hartley stopped by the job site about a week into the project and advised that he was an experienced brick mason and brick mason's helper. Mr. Glover watched him do some of the work, and it was clear to him that Mr. Hartley was very good at the job. He did not have to give Mr. Hartley direction, because he could perform the work well without instruction. Mortar, mixers, wheelbarrows, scaffolds, and walk boards

belonged to one or more of the masons on the job site. Mr. Glover did not supply tools.

He confirmed his discussion with Mr. Gorsline regarding available work. Mr. Glover told him he had enough workers to do the job and did not need Mr. Gorsline at that time. Mr. Glover confirmed that the decision to add another worker on the block-laying project was his, and not Mr. Hartley's.

Mr. Glover stated there was no rule forbidding workers like Mr. Hartley from bringing a helper, but Mr. Glover bore no responsibility for paying the helpers. For instance, masons often brought their sons to teach them the trade, but Mr. Glover did not pay the boys. He did not require Mr. Hartley to be at the job site every day. After a week's delay in the project, during which additional concrete and steel were being provided, Mr. Hartley returned to the job site and informed Mr. Glover that he had performed work for a previous employer during the lull. Mr. Glover considered Mr. Hartley a self-employed co-worker, and not an employee.

*Alan Hammons' Testimony*

Mr. Hammons is a sole proprietor and general contractor on the subject building project. He has a business license in his name. Mr. Hammons contacted Mr. Glover, with whom he had worked previously, to perform masonry work at the site. The two agreed on how much Mr. Glover would charge per block on each construction job. From that point, it was Mr. Glover's responsibility to get the block laid. Mr. Hammons supplied the block, sand, and mortar, while Mr. Glover secured the labor. Mr. Hammons understood that each mason and mason's helper was an independent contractor. Mr. Glover did not hire people to work on the site, but arranged for workers to get the job done. Mr. Glover decided how many workers he needed to get the masonry work done.

When on the job site, Mr. Hammons noted Mr. Glover performing mason duties, while others performed their duties as well. He did not see Mr. Glover directing the other workers. Everyone knew what their job was. Mr. Hammons confirmed that he received a bill each week from Mr. Glover corresponding to the number of blocks laid. He was not involved in the distribution of pay to each worker. The workers had no set work hours. Some came early; some came late. If workers wanted to leave early, they could. Hammons' concern was to get the job done timely.

Mr. Hammons recalled Mr. Hartley saying that he also worked on another job site, but he could not remember when Mr. Hartley did so. Mr. Hammons testified that Mr. Hartley arrived at the job site and prepared to work on a day Mr. Glover and the other masons were working at his other project in Johnson City. Mr. Hammons understood that Mr. Hartley was not "with" Mr. Glover. Mr. Hammons observed Mr. Hartley lay a few blocks on one occasion.

Mr. Hartley filed a Petition for Benefit Determination seeking additional medical and temporary disability benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. (T.R. 2.) Mr. Hartley filed a Request for Expedited Hearing pursuant to Tennessee Code Annotated section 50-6-239 (2014). (T.R. 3.) This Court heard the matter on March 9, 2016.

At the Expedited Hearing, Mr. Hartley asserted that he was Mr. Glover's employee. Given that Mr. Glover had no workers' compensation insurance, Mr. Hartley argued that the general contractor, Mr. Hammons, should be responsible for his injuries through Mr. Hammonds' workers' compensation insurance carrier. Mr. Hammons and Mr. Glover maintained that Mr. Hartley performed work at the project as an independent contractor and not an employee. Consequently, Mr. Hammons workers' compensation insurance carrier bears no responsibility for Mr. Hartley's injuries.

## Findings of Facts and Conclusions of Law

In this workers' compensation case, Mr. Hartley has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Mr. Hartley need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). He has the burden to come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.* However, the Court notes that once the existence of an employment relationship has been established, it is Mr. Hammons' burden to prove that the injured worker was not an employee but an independent contractor. *Galloway v. Memphis Drum Serv.,* 822 S.W.2d 584, 586 (Tenn. 1991).

Generally, to recover workers' compensation benefits, a claimant must be an employee and not an independent contractor. *Bargery v. Obion Grain Co.,* 785 S.W.2d 118, 121 (Tenn. 1990). The courts have defined "independent contractor" as follows:

> One who contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of the work, and who has the right to employ and direct the action of the workmen independent of his employer, and free from any superior authority in the employer to say how the specified work shall be done, or what the laborers shall do as the work progresses; one who undertakes to produce a given result without being in any way controlled as to the methods by which he attains that result.

5

*Barker v. Curtis*, 287 S.W.2d 43, 45 (Tenn. 1956).

The legislature has also provided guidance in this regard. The pertinent statute provides:

> In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:
>
> (a)    The right to control the conduct of the work;
> (b)    The right of termination;
> (c)    The method of payment;
> (d)    The freedom to select and hire helpers;
> (e)    The furnishing of tools and equipment;
> (f)    Self-scheduling of working hours; and
> (g)    The freedom to offer services to other entities[.]

Tenn. Code Ann. § 50-6-102(12)(D)(i) (2015).

The factors listed in section 50-6-102(D)(i) are not absolutes that preclude an examination of the parties' working relationship as a whole. *Masiers v. Arrow Transfer & Storage Co.*, 639 S.W.2d 654, 656 (Tenn. 1982). Moreover, no single aspect of the parties' relationship is determinative, and in deciding whether a worker is an employee or independent contractor, "the trier of fact must examine all relevant factors and circumstances" of the relationship. *Boruff v. CNA Ins. Co.*, 795 S.W.2d 125, 127 (Tenn. 1990).

Of the factors identified in section 50-6-102(12)(D)(i), the right to control the conduct of the work has been characterized as the most significant in determining whether an injured worker is an employee or independent contractor. *Galloway*, 822 S.W.2d at 586.

The Court carefully considered the evidence in this matter and weighed same in light of the above-referenced statutory authority and case law. The weight of the evidence submitted preponderates in favor of a finding that Mr. Hartley is an independent contractor, and not Mr. Glover's employee.

At the outset, the Court notes that all the witnesses appeared to be credible. While the Court noted Mr. Hartley's diligent efforts to accurately recall facts, at times he spoke slowly and often had to think for some time before answering questions. The Court determines Mr. Hartley could not recall all events prior to and after the accident. However, the Court carefully observed Mr. Hartley in order determine whether he was competent to testify. The Court finds that he was.

Mr. Hartley is a skilled tradesman, proficient as a mason's helper. He offered his services to Mr. Glover, who had contracted with Mr. Hammons to complete the masonry work required on the two restaurant construction sites in Mountain City. Mr. Hartley brought his own tools for the job and required no instruction on how to accomplish his work as a mason's helper. Neither Mr. Glover nor Mr. Hammons controlled Mr. Hartley in the performance of his duties.

Mr. Hartley contracted with Mr. Glover, much in the same way as Mr. Glover contracted with Mr. Hammons. They agreed upon a method and rate of payment for work performed, and each man performed his work "according to his own methods and without being subject to the control of his employer, except as to the result of the work [.]" See *Barker, supra.* When Mr. Glover left the Mountain City site to work in Johnson City, he did not inform Mr. Hartley of that fact, nor did he instruct Mr. Hartley to go with him to work at the Johnson City location, as one would expect in an employer-employee relationship. Mr. Hartley simply returned home or was free to work elsewhere when the masons were not at the job site.

While Mr. Hartley arrived at roughly the same time each work day, he was free to set his own work hours and could come and go as he pleased. If a worker's absences became an ongoing problem, Mr. Glover said he would simply replace the worker with someone who would complete the job. No formal discipline or termination was anticipated.

There is conflicting testimony as to whether Mr. Hartley performed work in Johnson City for another contractor while also working at the Mountain City sites. However, the weight of the evidence shows that Mr. Hartley could have done so, if he wished.

Mr. Glover did not keep track of Mr. Hartley's work hours, or the hours of any of the brick masons or mason's helpers. At the end of each week, each man would tell him how many hours he worked, and Mr. Glover paid him, per their agreed hourly rate. The Court also finds that Mr. Hartley was free to bring helpers to the job site just as the masons were, so long as they bore the responsibility for remuneration, if any. The Court notes that Mr. Hartley did not feel as though he could afford to pay helpers from the income he earned; hence his reference of Mr. Gorsline to Mr. Glover. This fact, however, did not prevent Mr. Hartley from using a helper, if he saw fit.

The Court finds that the information preponderates in favor of the conclusion that Mr. Hartley was an independent contractor, and not Mr. Glover's employee. While Mr. Hartley's injuries as a result of his fall appear to be substantial, neither Mr. Glover nor Mr. Hammons are responsible for workers' compensation benefits associated therewith.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Hartley's claim against Mr. Hammons for temporary disability and medical benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on April 18, 2016, at 10:30 a.m. Eastern.

   **ENTERED this the 18th day of March, 2016.**

   **Judge Brian K. Addington**
   **Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call 855-543-5044 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or

other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of Kevin Hartley
2. Affidavit of April Yarber

Technical record:[2]
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing;
4. Employer's Response to REH; and,
5. Pre-Hearing Order

---

[2] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on March 18, 2016.

| Name | Certified Mail | First Class Mail | Via Email | Service Sent To: |
|---|---|---|---|---|
| David Miller, Esq. | | | X | dmillerlaw@embarqmail.com |
| Nick Peterson, Esq. | | | X | Nick.peterson@petersonwhite.com |

Penny Shrum, Clerk of the Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov